ORTMAN v. MILLER

FORD v. MILLER

1. WORDS AND PHRASES—"RESIDENT".

The terms "residence" and "resident" have no fixed meanings in the law; they have variable meanings depending on the context in which the words are used and the subject matter.

2. AUTOMOBILES—MOTOR VEHICLE ACCIDENT CLAIMS ACT—"RESIDENT"—MEANING—PURPOSE.

The exclusion of nonresidents from the protection of the Motor Vehicle Accident Claims Act was meant to exclude residents of other states whose relationships to Michigan are transitory and lack any degree of permanence; the term "residence" was not used in a narrow or restrictive sense in the Act (MCLA § 257.1125).

3. AUTOMOBILES—MOTOR VEHICLE ACCIDENT CLAIMS ACT—"RESIDENT"—MILITARY PERSONNEL.

Two air force personnel stationed in Michigan were "residents" of the State of Michigan for purposes of the Motor Vehicle Accident Claims Act where they had had their actual place of abode in Michigan for five months before their accident with an uninsured motorist and where, when they had entered Michigan, they had no formulated plans to leave shortly after their arrival (MCLA § 257.1125).

4. PARENT AND CHILD — EMANCIPATION — INDUCTION INTO ARMED FORCES.

A child is emancipated by his induction into the armed forces, with or without parental consent, at least where it is according to law; minority does not bar servicemen from obtaining residency outside of the state where their parents reside (MCLA § 722.4).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 25 Am Jur 2d, Domicil §§ 1, 4–10, 13–15.

[2, 3] 8 Am Jur 2d, Automobiles and Highway Traffic § 852.

[4, 5] 8 Am Jur 2d, Automobiles and Highway Traffic §§ 82, 852.

5. AUTOMOBILES — MOTOR VEHICLE CLAIMS ACTS — "RESIDENT" — MINORS — MILITARY PERSONNEL.

  Servicemen, under 21 years, assigned to, and living on, military bases in the State of Michigan for five months prior to an automobile accident with an uninsured motorist who had no formulated plans to leave Michigan were "residents" of the State of Michigan for purposes of the Motor Vehicle Accident Claims Act, even though their parents resided in other states (MCLA § 257.1125).

Appeals from Macomb, Alton H. Noe, J. Submitted Division 2 January 12, 1971, at Detroit. (Docket Nos. 8682, 8683.) Decided May 18, 1971.

Complaints by Scott Ortman and Barry Ford against Todd B. Miller for the negligent operation of an automobile. Cases consolidated for trial. James M. Hare, Secretary of State, intervened on behalf of the Motor Vehicle Accident Claims Fund. Summary judgment for the intervening defendant. Plaintiffs appeal. Reversed.

*Moss, Williams & Smith,* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Joseph B. Bilitzke,* Assistant Attorney General, and *John B. Bruff,* Special Assistant Attorney General, for the intervening defendant.

Before: V. J. BRENNAN, P. J., and FITZGERALD and LEVIN, JJ.

LEVIN, J. The question is whether the trial court correctly ruled that the plaintiffs, Scott Ortman and Barry Ford, were not residents of Michigan when they suffered injuries in an automobile accident alleged to have been caused by an uninsured motorist,

defendant Todd B. Miller, and, hence, may not recover from the Motor Vehicle Accident Claims Fund.

The act provides:

"The secretary shall not pay out of the fund any amount in favor of a person who resides outside of this state unless the person resides in a jurisdiction in which recourse of a substantially similar character to that provided by this act is afforded to residents of this state, but no payment shall include an amount that would not be payable by the law of the jurisdiction in which the person resides."[1]

We hold that the plaintiffs, who, at the time of the accident, were serving in the United States Air Force and were stationed at Selfridge Air Force Base, Mt. Clemens, were residents of Michigan within the meaning of this statutory provision, and, accordingly, we remand for trial of their claims against Miller.[2]

The automobile accident occurred on March 31, 1966. Ford was driving Ortman's automobile and Ortman was a passenger. Their automobile collided with an automobile being driven by defendant Miller. Separate actions were commenced by Ortman and Ford against Miller. The actions were consolidated for trial, and the Secretary of State intervened as a party defendant.[3]

Ortman was born in California and Ford in North Carolina. They both resided in the states of their birth until they were inducted into the armed forces. At the time of the accident both Ortman and Ford were minors. Ortman was within three weeks of

---

[1] MCLA § 257.1125 (Stat Ann 1968 Rev § 9.2825).

[2] The trial judge entered a summary judgment of no cause of action in favor of the Secretary of State, the intervening defendant. The plaintiffs' actions have not as yet been tried on the merits.

[3] MCLA § 257.1105 (Stat Ann 1968 Rev § 9.2805).

his 21st birthday and Ford was within four months of his 20th birthday. We were advised during oral argument[4] that they had been living in Michigan for about five months before the accident. A few months after the accident, Ortman married a Michigan resident and he lived with her off the base in Mt. Clemens until his discharge from the Air Force. Thereafter, for some undisclosed period of time, he remained in Mt. Clemens where he obtained private employment. Subsequently, he moved out of the state. Seven months after the accident, Ford married a North Carolina resident and returned with his bride to Mt. Clemens where he resided off the base until he was transferred by the Air Force to a base out of the state. The record does not disclose for how long after the accident either Ortman or Ford continued to live in Michigan.

Ortman's automobile, the automobile involved in the accident, was registered in Michigan, and, as an insured motorist, he had paid $1 to the Motor Vehicle Accident Claims Fund when he purchased Michigan license plates for the vehicle.

The act provides that "residence shall be determined as of the date of the motor vehicle accident as a result of which the damages are claimed".[5]

The terms "residence" and "resident" have no fixed meaning in the law. They have variable meanings depending on the context in which the words are used and the subject matter:

" 'Resident' has no technical meaning, and no fixed meaning applicable to all cases, but rather it has many meanings, and is used in different and various senses, and it has received various interpretations by the courts. Generally the construction or sig-

---

[4] See *Covington Mutual Insurance Company* v. *Copeland* (1969), 382 Mich 109, 110.

[5] MCLA § 257.1124 (Stat Ann 1968 Rev § 9.2824).

nification of the term is governed by the connection in which it is used, and depends on the context, the subject matter, and the object, purpose, or result designed to be accomplished by its use, and its meaning is to be determined from the facts and circumstances taken together in each particular case."[6]

Thus, in *School District No. 1, Fractional, of the Township of Mancelona v. School District No. 1 of Township of Custer* (1926), 236 Mich 677, 681, the Michigan Supreme Court, while acknowledging that "the word 'residence' as used in statutes relating to voting, eligibility to hold office, taxation, probate and administration of estates, etc., is synonymous with domicile", ruled that, for the purpose of determining entitlement to public school privileges, children reside in a district in which their father has acquired a home in good faith. Accordingly, even though the father of the children in question owned a farm in the defendant district, continued to vote in that district, and intended to return there, his children were residents of the plaintiff district where he had acquired a home convenient to his employment and where he had lived with them for nearly two years at the time of the action. The residence in the plaintiff school district was, said the Court, "a residence acquired in good faith. [The father] did not move there for the better school advantages which the plaintiff could give his children. He went there for business reasons."

In *Collins v. Yancey* (1959), 55 NJ Super 514, 522 (151 A2d 68, 73), the Superior Court of New Jersey, after consideration of the objectives of its Unsatis-

---

[6] 77 CJS, Resident, pp 305, 306.

"In determining its [the word 'residence'] meaning as it is used in particular pieces of legislation, its context within the statute and the legislative purpose are examined." 25 Am Jur 2d, Domicile, § 4, p 7. Similarly, see 77 CJS, Residence, pp 289–305.

fied Claim and Judgment Fund Law, ruled that a person who was employed as a cook in a diner for approximately five months before he was injured by an uninsured motorist and who had moved all his possessions to New Jersey at the time of the commencement of his employment and occupied a rented room and ate his meals in the diner, was a qualified resident of New Jersey within the meaning of the law, even though, shortly after the accident, he left New Jersey to return to his sister's home (a place where he had lived shortly before entering the State) to recuperate, where he remained. His New Jersey residence, said the Court, "had that permanency which qualifies him for the recourse contemplated by the statute".

In the subsequent case of *Williamson* v. *Potter* (1963), 80 NJ Super 517, 522 (194 A2d 261, 263), the Court held that a member of the armed forces who had been stationed in the State of Washington and who was transferred to Fort Monmouth about five months before he was killed by an uninsured motorist and who at the time of his death was endeavoring to find living quarters off the base for his wife and two children, who were then residing temporarily with her parents outside the State, had become a resident of New Jersey within the meaning of the Unsatisfied Claim and Judgment Fund Law. There was, said the Court, "a degree of permanence that clearly brings him within the purview of being a resident of this state" within the meaning of the law.[7]

---

[7] The Court referred to a provision of the New Jersey Constitution which prohibits a person in the armed forces from being considered a resident of the state while being stationed within the state. The provision was contained in a section of the Constitution entitled, "Elections and Suffrage". The provision, ruled the Court, prohibited a person only from acquiring domicile for the purpose of voting by virtue of being stationed at a military installation.

In *Catalanotto* v. *Palazzolo* (1965), 46 Misc 2d 381 (259 NYS2d 473), a New York trial court held that an alien, who was illegally in the country, but who had lived in New York for almost one year before he was injured in an automobile accident and who had held various jobs within the State and was a member of a union in New York City was a "resident" of New York State within the meaning of a New York statute providing indemnification for persons injured by uninsured motorists.[8]

---

Michigan's Const 1908, art III, entitled, "Elective Franchise", provided:

"Sec. 2. No elector shall be deemed to have gained or lost a residence by reason of his being employed in the service of the United States."

"Sec. 3. No soldier, seaman or marine in the army or navy of the United States shall be deemed a resident of this state in consequence of being stationed in any military or naval place within the state."

These provisions were not carried forward in the Constitution of 1963; however, by PA 1963 (2d Ex Sess), No 3, they were added as subparagraphs (b) and (c) to § 11 of the Michigan Election Law. MCLA § 168.11 (Stat Ann 1971 Cum Supp § 6.1011).

See *Carrington* v. *Rash* (1965), 380 US 89 (85 S Ct 775, 13 L Ed 2d 675), where the United States Supreme Court held that a provision of the Texas Constitution prohibiting any member of the armed forces of the United States who moved his home to Texas during the course of his military duty from ever voting in any election in that state so long as he was a member of the armed forces violated the Equal Protection Clause as applied to a soldier who had been domiciled in Texas since 1962 and who intended to make his home there permanently.

Also of interest is that § 11 of the Michigan Election Law contemplates the possibility that an individual may have more than one residence:

"The term 'residence', as used in this act, for registration and voting purposes shall be construed to mean that place at which a person habitually sleeps, keeps his or her personal effects and has a regular place of lodging. Should a person have more than 1 residence, or should a wife have a residence separate from that of the husband, that place at which such person resides the greater part of the time shall be his or her official residence for the purposes of this act. This section shall not be construed to affect existing judicial interpretation of the term residence." MCLA § 168.11 (Stat Ann 1971 Cum Supp § 6.1011).

[8] Similarly, see *In re George Yap* (1963), 39 Misc 2d 835 (241 NYS2d 976).

We have considered the Maryland cases[9] which equate residence with domicile and are of the opinion that they take an unduly restrictive view inconsistent with the intendment of our Motor Vehicle Accident Claims Act.

In *Douglas v. New York, N. H. & H. R. Co.* (1929), 279 US 377, 386 (49 S Ct 355, 356, 73 L Ed 747, 751), a New York statute limiting access to its courts by nonresidents was challenged on the ground that it violated the provision of the Federal Constitution securing to the citizens of each state the privileges and immunities of citizens in the several states. The Court responded:

"But however often the word resident may have been used as equivalent to citizen, and for whatever purposes residence may have been assumed to follow citizenship there is nothing to prohibit the legislature from using 'resident' in the *strict primary sense of one actually living in the place for the time,* irrespective even of domicile. If that word in this statute must be so construed in order to uphold the act or even to avoid serious doubts of its constitutionality we presume that the Courts of New York would construe it in that way; as indeed the Supreme Court has done already in so many words." (Emphasis supplied.)

The implication is that while "citizenship", "domicile", and "residence" are frequently used interchangeably and are sometimes said to be synonymous,[10] it frequently is necessary to distinguish between the terms.

---

[9] *Walsh v. Crouse* (1963), 232 Md 386 (194 A2d 107); *Maddy v. Jones* (1963), 230 Md 172 (186 A2d 482); *Rumbel v. Schueler* (1964), 236 Md 25 (202 A2d 368); *Hawks v. Gottschall* (1966), 241 Md 147 (215 A2d 745).

[10] " 'Residence' sometimes equals domicile, as in voting. Again, as in taxation, one who is not a mere transient or sojourner is a 'resident.' § 29.211–2, Income Tax Regulations. The definition varies

We are persuaded that our Legislature did not use the word "residence" in this context in a narrow or restrictive sense.   The exclusion of nonresidents from the protection of the act was meant to exclude residents of other states whose relationship to Michigan is transitory and lacks any degree of permanence.   Ortman's and Ford's employment had taken them to Michigan and at the time of the accident their actual place of abode was Michigan.   They had

with the statute." *McGrath* v. *Kristensen* (1950), 340 US 162, 175 (71 S Ct 224, 232, 95 L Ed 173, 184).

See, also, *Tedars* v *Savannah River Veneer Co.* (1943), 202 SC 363, 380 (25 SE2d 235, 241, 242).

The American Law Institute recently reported:

"k. *Use of word 'residence.'* Statutes in the United States rarely speak in terms of domicil but use 'residence' instead.   Residence is an ambiguous word whose meaning in a legal phrase must be determined in each case.   Frequently it is used in a sense equivalent to domicil.   On occasion it means something more than domicil, namely, a domicil at which a person actually dwells.   On the other hand, it may mean something else than domicil, namely, a place where the individual has an abode or where he has settled down to live for a period of time, but not necessarily with such an intention of making a home there as to create a domicil.   The phrase 'legal residence' is sometimes used as the equivalent of domicil.

"In the absence of evidence of a contrary legislative intent, 'residence' in a statute is generally interpreted:

"As being the equivalent of domicil in statutes relating to judicial jurisdiction, voting, eligibility to hold office, exemptions (other than homestead) from the claims of creditors, liability for inheritance and poll taxes, and certain personal property taxes.

"As meaning a domicil at which the person in question actually dwells in statutes relating to the competence of a divorce court and homestead exemption laws.

"As meaning the place where a person dwells without regard to domicil in statutes relating to income taxation, attachment, school privileges and constructive service on nonresident motorists.

"With respect to statutes relating to venue, the cases are divided as to whether residence is the equivalent of domicil or means the place where the person in question dwells without regard to domicil. In statutes relating to gaining a settlement under the poor laws, residence may mean a domicil, or a domicil at which the person in question dwells, or the place where he dwells without regard to domicil."   1 Restatement, Conflicts of Laws 2d, § 11, pp 45, 46.

The reporter of the Restatement, Conflict of Laws Second, Professor Willis L. M. Reese, is of the view that the word "domicile" "may bear a somewhat different import for each of the various purposes which the concept serves in the law".   See Reese, Does Domicile Bear a Single Meaning?   55 Colum L Rev 589, 595 (1955).

been here for a substantial period of time and when they entered Michigan they did so without formulated plans to leave shortly thereafter. They were, we are convinced, residents of Michigan within the intendment of the Motor Vehicle Accident Claims Act.

While the residence of an infant quite naturally follows that of parents having custody, on the same principle that a child is emancipated from his parents when he marries,[11] his induction into the armed forces,[12] with or without the consent of his parents, at least where it is according to law, should be deemed to emancipate him. See PA 1968, No 293, which adds the authority of statutory law by providing that emancipation occurs by operation of law during the period when a minor is on active duty with the armed forces of the United States.[13] Ortman's and Ford's minority did not bar them from becoming residents of Michigan.

Reversed and remanded for trial. Costs to abide the event.

All concurred.

---

[11] See 39 Am Jur, Parent and Child, § 65, p 706.
[12] *Cf.* 39 Am Jur, Parent and Child, § 64, p 704.
[13] MCLA § 722.4 (Stat Ann 1971 Cum Supp § 25.244[4]).