# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* Estate of JAMES A. ZIELSKE.

---

ELIZABETH PORTER ZIELSKE, Personal
Representative of the Estate of JAMES A.
ZIELSKE,

        Petitioner-Appellee,

v

ELIZABETH A. ZIELSKE,

        Respondent-Appellant.

UNPUBLISHED
September 22, 2016

No. 327808
Mecosta Probate Court
LC No. 13-000372-DE

---

Before: MURRAY, P.J., and HOEKSTRA and BECKERING, JJ.

PER CURIAM.

In this dispute concerning the distribution of property and other assets pursuant to the last will and testament of James A. Zielske, respondent Elizabeth A. Zielske ("EAZ") appeals as of right from an order denying her objections to the sworn statement of petitioner Elizabeth Porter Zielske ("EPZ"), the personal representative of the Estate of James A. Zielske.[1] We vacate the probate court's order and remand the matter so the probate court can make findings of fact regarding the testator's intent with respect to certain language in the will after the parties have an opportunity to present extrinsic evidence relevant to that issue.

## I. FACTS

The testator died on July 5, 2013 and was survived by his wife, EPZ, and his adult daughter, EAZ, who was born of his prior marriage. On July 11, 2014, pursuant to MCL 700.1302(d) and MCL 700.3415, petitioner asked the probate court for instructions as to the meaning and effect of the language in subparagraph A of the second section of the will. The

---

[1] We will use "EPZ" to refer to Elizabeth Porter Zielske personally and "petitioner" to refer to her in her capacity as the personal representative of the estate.

-1-

second section of the will, dealing with the testator's intended bequest of his assets, provides as follows:

> SECOND: I give and devise all of my property of whatever kind and wherever found as follows:
>
> A. I give and devise my residence and property located at 20550 180th Avenue, Big Rapids, Michigan to my wife, ELIZABETH PORTER ZIELSKE, if she survives me.
>
> B. All the rest, residue and remainder of my property of whatever kind and wherever found I give and devise one-half (1/2) to my daughter, ELIZABETH ANN ZIELSKE, of Big Rapids, Michigan and one-half (1/2) to my wife, ELIZABETH PORTER ZIELSKE.
>
> In the event either ELIZABETH PORTER ZIELSKE or ELIZABETH ANN ZIELSKE predecease me, then her share shall pass to the survivor.

The real property commonly known as 20550 180th Avenue is a 43-acre parcel of "farm" land that contains a house, garage, pole barn, stable, and other out buildings. Although the record is not entirely clear, from our review of it, and based on answers provided by petitioner's counsel at oral argument, it appears that the testator ran his businesses on the farmland, being Quality Custom Trailer and Welding Repair, where he made and sold handmade trailer axles, Innovative Med-Grow Solutions, where he may have grown medical marijuana, and Quality Custom Landscape and Quality Farms, as he raised and sold cattle and also grew hay on the property.

In her request for interpretation by the probate court, petitioner indicated that she interpreted the phrase "my residence and property" in subparagraph A to devise everything at 20550 180th avenue, including all of the personal property in the residence, garage, pole barn, stable, and elsewhere on the real property, to EPZ; and thus, it was not a part of the residue. Respondent argued that "the words 'my residence and property' refers [sic] only to the residence, meaning the house, and the personal property in the house," further arguing that the rest of the real property located at the address (i.e., the farm land of approximately 43 acres ) was not included in this provision. Respondent alternatively claimed that the provision was ambiguous, and that extrinsic evidence should be admitted to discern the testator's intent. In that regard, respondent submitted an affidavit in which she averred that the testator had told her many times he would leave the farm to her because he wanted it to remain in his family. Respondent also showed that the warranty deed for 20550 180th Avenue named only the testator as the owner, which she believed reflected his intent to keep the farm in his family.

The probate court rejected respondent's argument and interpretation and held that: (1) the house or residence could not be devised without the land on which it was situated, (2) there is no patent or latent ambiguity in the language at issue in the will, (3) because there is no ambiguity in the will language, extrinsic evidence is not needed to glean the testator's intent, (4) the words "my residence" include the house at 20550 180th Avenue and the land of approximately 43 acres on which the house sits, including fixtures and outbuildings, and (5) the

words "and property" refer to all of the personal property located on the 43-acre parcel. Respondent filed a motion for reconsideration of this decision, which the probate court denied.

On February 24, 2015, respondent filed objections to petitioner's sworn statement and final account. The probate court denied respondent's objections. This appeal followed.

## II. DISCOVERY OBJECTIONS

Respondent first argues that the probate court erred in denying her motion to compel more specific answers to interrogatories and requests for production of documents. However, under MCR 5.801(D), which sets forth this Court's and the circuit court's appellate jurisdiction for appeals from a probate court, an "order regarding discovery . . . may be appealed only to the circuit court and only by leave of that court." As such, this Court lacks jurisdiction to consider respondent's argument because it concerns a probate order regarding discovery.[2]

## III. OBJECTIONS TO SWORN STATEMENT AND FINAL ACCOUNT

Respondent also challenges the probate court's order denying her objections to petitioner's sworn statement and final account. However, she has failed to demonstrate that any error occurred. Respondent's brief simply catalogs what occurred before the probate court. She notes that she objected to some of petitioner's filings and made certain requests that the probate court denied. She neither asserts that the probate court erred in denying her requests nor identifies legal and factual support for any alleged error. She cites no authority and fails to present even a conclusory argument, except for one unsupported assertion that "[u]pon information and belief, [petitioner] distributed certain assets related to the businesses to herself only."

Although respondent claims that petitioner did not include all assets in the estate or wrongly took assets for herself, she provides no evidentiary support for this assertion. She does not identify what specific findings of fact were made or how they were clearly erroneous, does not point to contrary evidence that undermines those findings, and does not explain how those purportedly incorrect findings undermined the sworn statement and final account. "It is not enough for an appellant in [her] brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for [her] claims, or unravel and elaborate for [her her] arguments, and then search for authority either to sustain or reject [her] position." *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). Given that this issue is not argued or briefed in any real sense, we consider it abandoned. *Id.*

## IV. INTERPRETATION OF THE WILL

Finally, respondent takes issue with the trial court's interpretation of the words "my residence" in subparagraph A of the second section of the will as meaning both the house and the

---

[2] Further, because the discovery order appealed from is appealable only by leave, not by right, we do not have the option of simply transferring it to the circuit court. See MCR 5.801(E).

-3-

entire 43-acre parcel. "[A] probate court's construction of a will is a question of law subject to de novo review." *In re Raymond Estate*, 483 Mich 48, 53; 764 NW2d 1 (2009). Likewise, whether the language used in a will is ambiguous is an issue of interpretation that this Court reviews de novo. *In re Bem Estate*, 247 Mich App 427, 433; 637 NW2d 506 (2001).

"The primary duty of any court faced with the task of resolving a disputed testamentary disposition is to effectuate as nearly as possible the intention of the testator." *In re Butterfield Estate*, 405 Mich 702, 711; 275 NW2d 262 (1979). As our Supreme Court explained:

> A fundamental precept which governs the judicial review of wills is that the intent of the testator is to be carried out as nearly as possible. As with other legal documents, the "intent" is to be gleaned from the will itself unless an ambiguity is present. The law is loath to supplement the language of such documents with extrinsic information. This is especially so in the case of testamentary documents because the maker is not available to provide additional facts or insight. [*In re Kremlick Estate*, 417 Mich 237, 240; 331 NW2d 228 (1983).]

In other words, because the plain language of a will constitutes the best source from which to determine intent, "[i]f there is no ambiguity, the Court is to enforce the will as written," giving effect to the testator's intent as indicated in the plain language of the unambiguous will, without any need to consider extrinsic information. *Raymond*, 483 Mich at 52.

However, when a will is ambiguous in its wording, and thus "the intention of the testator cannot be gleaned solely by reference to the instrument," the court has to look beyond the language of the will to ascertain the testator's intent. *Butterfield*, 405 Mich at 711; *Raymond*, 483 Mich at 52 ("[I]f the intent of the testator cannot be gleaned solely by reference to the will because there is an ambiguity, the Court may discern the intent of the testator through extrinsic sources."); *Kremlick*, 417 Mich at 240 ("[P]resence of an ambiguity requires a court to look outside the four corners of a will in order to carry out the testator's intent."). There are two types of ambiguity:

> A patent ambiguity exists if the uncertainty as to meaning "appears on the face of the instrument, and arises from the defective, obscure, or insensible language used". A latent ambiguity, on the other hand, arises "where the language employed is clear and intelligible and suggests but a single meaning, but some extrinsic fact or extraneous evidence creates" the possibility of more than one meaning. [*Kremlick*, 417 Mich at 240, quoting *Butterfield*, 405 Mich at 711.]

"[I]f the document evidences a patent or latent ambiguity, there are two external sources through consideration of which a court may establish the intent of the testator: (1) surrounding circumstances and (2) rules of construction." *Butterfield*, 405 Mich at 711.

Additionally, our Supreme Court has held that in interpreting a will where an ambiguity *may exist*, "extrinsic evidence is admissible: (1) to prove the existence of ambiguity; (2) to indicate the actual intent of the parties; and (3) to indicate the actual intent of the parties as an aid in construction." *Kremlick*, 417 Mich at 241. In other words, "not only may extrinsic evidence

be used to clarify the meaning of a latent ambiguity, but it may be used to demonstrate that an ambiguity exists in the first place and to establish intent." *Id*. *Kremlick* concerned a latent ambiguity and the admission of certain evidence that both established the existence of the latent ambiguity and helped to clarify what the language intended.[3] *Id*. at 241. If there was no latent ambiguity in the will, the extrinsic evidence would not have been admissible to resolve the issue of intent. In other words, although extrinsic evidence is admissible to demonstrate that a latent ambiguity exists, it is not admissible to "resolve" the meaning of a plain and unambiguous provision of a will:

> We have long held that parol testimony cannot be resorted to to add to, vary or contradict the language of a will unambiguous on its face. Nor may parol testimony of a testator's intention in making a will be given or properly received. The mere filing of a bill for construction of a will does not thereby make the will or any of its terms ambiguous any more than does the fact that competing litigants differ in their views as to the proper construction of the language or provisions in a will. The determination of whether ambiguity exists in a will is essentially a judicial function. Any other rule would open the door to all manner of testimony and speculation over the meaning of wills, which would thus by the mere fact of litigation in every case be at the mercy of possibly illy-recollected tea-time conversation and rumor and ancient gossip by volunteers and other persons whose memories might occasionally unconsciously be warped or stimulated by their present loyalties, monetary or emotional. [*Detroit Wabeek Bank & Trust Co v City of Adrian*, 349 Mich 136, 143; 84 NW2d 441 (1957).]

On appeal, respondent argues as she did below that the plain language "my residence and property" means only the house ("my residence") and its contents ("property"), and that the probate court erred in interpreting this to include the entire 43 acres of farm land and all of the personal property on the farm. Alternatively, respondent argues that the language is ambiguous and that the probate court erred in concluding that it was unambiguous and in failing to admit extrinsic evidence regarding the testator's intent. We agree with the latter argument.

Pursuant to subparagraph A, the testator sought to "give and devise" to EPZ "my residence and property located at 20550 180th Avenue." The term "residence" has a long-

---

[3] The will in *Kremlick* devised half the residue to "the Michigan Cancer Society." *Kremlick*, 417 Mich at 239. The Court held that (1) an affidavit from the executrix of the estate, in which she asserted that (i) the intended beneficiary was the American Cancer Society, Michigan Division, not the Michigan Cancer Society, an affiliate of the Michigan Cancer Foundation; and (ii) she had on multiple occasions discussed the provisions of the will with the testator and he frequently mentioned that the American Cancer Society was to be a beneficiary, and (2) evidence that the testator had made substantial direct contributions to the American Cancer Society, that the American Cancer Society had helped his wife when she was dying of cancer, and that at the time of her death testator requested memorials to the American Cancer Society, was admissible and "may be used both to establish an ambiguity and to help resolve it." *Id*. at 241.

standing legal connotation and its usage in this provision of the will is contrary to its usual connotation. *Black's Law Dictionary* has four definitions for "residence," as follows:

> **1.** The act or fact of living in a given place for some time <a year's residence in New Jersey>. – Also termed *residency*. **2.** The place where one actually lives, as distinguished from a domicile <she made her residence in Oregon>. • *Residence* usu. just means bodily presence as an inhabitant in a given place; *domicile* usu. requires bodily presence plus an intention to make the place one's home. A person thus may have more than one residence at a time but only one domicile. Sometimes, though, the two terms are used synonymously. . . . **3.** A house or other fixed abode; a dwelling <a three-story residence>. **4.** The place where a corporation or other enterprise does business or is registered to do business <Pantheon Inc's principal residence is in Delaware>. [*Black's Law Dictionary* (10th ed), p 1502.]

As these definitions show, "residence" is typically used to designate that one is present, or has been present, at a particular location or place. This is often because such presence is relevant to jurisdictional issues, and the term is less commonly used to identify a physical structure.[4] As the third definition shows, when "residence" is used in the less-common way, the structure is a house or other dwelling, which provides shelter and a place in which a person lives.[5]

---

[4] The definitions and explanation in *Black's* are consistent with Michigan case law. See *Grange Ins Co of Mich v Lawrence*, 494 Mich 475, 494; 835 NW2d 363 (2013) (explaining that the distinction between "domicile" and "residence" is that "a person may have only one domicile, but more than one residence"); *Heniser v Frankenmuth Mut Ins Co*, 449 Mich 155, 163; 534 NW2d 502 (1995) (noting that in some instances residence includes an intent to live at the location, similar to domicile, and sometimes requires actual physical presence); *Ortman v Miller*, 33 Mich App 451, 454; 190 NW2d 242 (1971) (noting that "residence" and "resident" have no fixed meaning and vary depending on the context and subject matter in which they are used); *Reaume & Silloway v Tetzlaff*, 315 Mich 95, 99; 23 NW2d 219 (1946) (explaining that "residence" means the place where one resides, an abode, a dwelling or habitation, especially a settled or permanent home or domicile, is made up of fact and intention, and requires an abode and the intention of remaining); but see MCL 211.7dd(c) (definition of "principal residence" for purposes of homestead exemption "includes all of an owner's unoccupied property classified as residential that is adjoining or contiguous to the dwelling subject to ad valorem taxes and that is owned and occupied by the owner").

[5] See *Merriam-Webster's Collegiate Dictionary* (2003), p 1060 (defining "residence" as "a building used as a home"; "dwelling"); see also *Id.*, p 389 (defining "dwelling" as "a shelter (as a house) in which people live"); <http://www.dictionary.com/browse/residence> (accessed May 23, 2016) (defining "residence" as "the place, especially the house, in which a person lives or resides; dwelling place; home" and "a structure serving as a dwelling or home, especially one of large proportion and superior quality"); <http://www.dictionary.com/browse/dwelling>

Given that "residence" is essentially synonymous with house in the context of a will bequeath, under subparagraph A the testator gave to EPZ "my [house] and property located at 20550 180th Avenue." Although the parties' dispute has focused on the word "residence," and they seem to agree that "and property" refers to personal property, the language does not clearly indicate as much. The word "property" is ambiguous. It is unclear whether "property" refers to real property or personal property. It could have been used to indicate that EPZ was to receive the house as well as the real estate, being the 43-acres of land located at 20550 180th Avenue. It could have been used to indicate that EPZ was to receive the house as well as the personal property located in or associated with the house. It could have been used to indicate that EPZ was to receive the house and all of the personal property located on the 43 acres. In short, it is ambiguous because it is equally susceptible to more than a single meaning.

We also note that in the provisions that come immediately before and after the one at issue here, the will uses the phrase "all of my property of whatever kind" to identify the property. Had the testator meant to include all of the real and personal property at 20550 180th Avenue, a question arises as to why he did not use the same language that he used in all the other provisions, i.e., "all of my property of whatever kind." It seems misplaced to treat "my residence and property located at 20550 180th Avenue" as identical to "all of my property of whatever kind located at 20550 180th Avenue."

Further, that the house sits on 43 acres of property causes a latent ambiguity as to exactly what property is included under the term "my residence." Believing erroneously that it could not sever any of the land from the house, the trial court interpreted "my residence" to mean the house and the entire 43 acres. If the "residence" were "located" at an address identified in the will that corresponds to a ¼-acre parcel in a subdivision, "residence" would plainly include the entire ¼ acre lot at the address. Any other interpretation would be unreasonable because under those facts a testator could not have contemplated, much less intended, to divide the parcel at that address into two portions, with one portion containing the house and the other consisting of the remaining real property, and then separately devise the two. Dividing a parcel that size is not only impracticable but also likely prohibited under the local zoning code. On the other hand, as in this case, where the "residence" or house is "located" at an address identified in the will that corresponds to a 43-acre parcel, "residence" does not plainly include the entire 43-acre parcel. Normally, the devise or bequest of a house, without further descriptive words, passes the land upon which the house stands, "variously described as appurtenant thereto, or used in connection therewith[,]" and may include other buildings used in connection with the house and treated as part of the land on which the house sits, but need not include the entire tract. 80 Am Jur 2d, Wills § 1101, p 296. In light of this, the testator could have contemplated and intended to divide the parcel at that address into two portions, with one portion containing the house and the land appurtenant thereto, and the other consisting of the remaining real property considered the farm land. Dividing the property is not impracticable or prohibited.

Although there appear to be no Michigan cases addressing this issue, other states have addressed it. In *In re Sandersfeld Estate*, 187 Cal App 2d 14, 17 (1960), the testatrix's will

---

(accessed May 23, 2016) (defining "dwelling" as "a building or place of shelter to live in; place of residence; abode; home").

devised "my home, situated at 8942 Crescent Ave."[6]  The property at that address was 4½ acres. *Id*. at 18.  It consisted of a house, yard, and garage enclosed by a fence, and an additional tract of land planted with avocado and orange trees, the care of which had been abandoned at the time the testatrix executed her will.  *Id*.  The court held that this information regarding the nature of the property "revealed an uncertainty not apparent on the face of the will, i.e., whether, in devising her 'home' the testatrix referred only to her house and the real estate immediately adjoining the same, or referred to her house and all of her property in the tract of land surrounding it." *Id*.  The court concluded that there was a latent ambiguity, and upheld the lower court's finding that the testatrix considered only the house and the property immediately adjoining it as her "home." *Id*. at 19-20.

Here, although the plain and ordinary meaning of the term "residence" tends to support respondent's more limited interpretation that does not include all 43 acres of real property, we hold that this provision is ambiguous because when "residence" is joined with "and property" the entire phrase is equally susceptible to more than a single meaning.  Further, the intention of the testator cannot be gleaned solely by reference to the will, because the fact that the house sits on 43 acres of property used not just for residential purposes causes a latent ambiguity under these circumstances as to exactly what property is included under the term "my residence." Accordingly, we remand to the probate court so that it can make findings of fact regarding the testator's intent after the parties have an opportunity to present extrinsic evidence relevant to that issue.  We note that respondent is limited to the admission of evidence relevant to what the testator meant by the words "residence and property located at 20550 180th Avenue."  Those words do not support respondent's contention that he meant her to have the entire farm, as the testator's residuary clause divides all other property, other than that given to EPZ in the provision at issue, to EPZ and EAZ equally.

Vacated and remanded for further proceedings consistent with this opinion.[7]  We do not retain jurisdiction.

/s/ Joel P. Hoekstra
/s/ Jane M. Beckering

---

[6] "Cases from other jurisdictions, although not binding, may be persuasive."  *Holland v Trinity Health Care Corp*, 287 Mich App 524, 529 n 2; 791 NW2d 724 (2010).

[7] Respondent also argues that the probate court's opinion and order denying her motion for reconsideration contained factual findings that were clearly erroneous.  Given that this opinion and order has been effectively overruled by our decision today, we will not address that issue.