# STATE OF MICHIGAN

# COURT OF APPEALS

VALENCIA LEWIS,

        Plaintiff-Appellee,

and

R & R TRANSPORTATION, LLC,

        Intervening Plaintiff-Appellee,

v

FARMERS INSURANCE EXCHANGE,

        Defendant-Appellant.

FOR PUBLICATION
April 19, 2016
9:25 a.m.

No. 324744
Macomb Circuit Court
LC No. 13-003570-NI

Before: MURRAY, P.J., and STEPHENS and RIORDAN, JJ.

PER CURIAM.

In this action for personal protection insurance ("PIP") benefits under the no-fault act, MCL 500.3101 *et seq.*, defendant appeals by leave granted[1] the trial court's order denying its motion for summary disposition against plaintiff Valencia Lewis and plaintiff R & R Transportation, LLC.[2] We reverse and remand for entry of an order granting summary disposition in favor of defendant.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case arises out of plaintiff's claim for PIP benefits—under a no-fault policy issued by defendant to plaintiff's purported "relative," Tamekiah Gordon—for injuries that plaintiff suffered as a pedestrian during a hit-and-run car accident on October 26, 2012. On that date, plaintiff was a resident of Harrison Township, Michigan, living in a townhouse with Gordon and

---

[1] *Valencia Lewis v Famers Insurance Exchange*, unpublished order of the Court of Appeals, entered July 29, 2015 (Docket No. 324744).

[2] Although it intervened in the trial court, R & R has not filed a brief or otherwise appeared in the instant appeal.

DeQuail Johnson, Gordon's son. At the time, neither plaintiff nor Johnson owned a motor vehicle covered by no-fault insurance. Gordon, however, owned a Ford Expedition that was insured under the no-fault policy issued by defendant.

Under the general "**DEFINITIONS**" section in Gordon's no-fault policy, "family member" is defined as follows: "**Family member** means a person related to you [the named insured] by blood, marriage or adoption who is a resident of your household." Additionally, "**PART III**" of the policy, which governs PIP coverage, provides, in pertinent part:

> We [Farmers] agree to pay in accordance with the **Code** [*i.e.*, "Chapter 31 of the Michigan Insurance Code," which is the no-fault act, MCL 500.3101 *et seq.*] the following benefits to or for an **insured person**. . . .
>
> * * *
>
> **Insured person** as used in this part means: you or any **family member**. . . .

Approximately 10 months after the accident, plaintiff initiated the instant action, asserting that defendant failed to pay PIP benefits to which she was entitled. The basis of her claim was that, under the terms of Gordon's policy and MCL 500.3114(1), which provides that PIP benefits can be recovered by "the person named in the policy" or "a *relative . . . domiciled in the same household*" (emphasis added), plaintiff qualifies as a "relative" who was "domiciled in the same household" as Gordon at the time of the accident, entitling her to PIP benefits under Gordon's policy.

In October 2013, defendant filed an answer to plaintiff's complaint. Along with its answer, defendant asserted, as an affirmative defense, that it was not first in priority to pay the no-fault benefits at issue.

Discovery ensued, spanning roughly 11 months. Plaintiff was deposed twice, and both times she was questioned about her relationship to Gordon. During her first deposition, plaintiff described Gordon as her "sister." However, at the second deposition, plaintiff described Gordon as her "cousin":

> *Q*. [I]s she [Gordon] related to you?
>
> *A*. Yes.
>
> *Q*. What is her relationship?
>
> *A*. My cousin.
>
> *Q*. When you say "cousin[,]" is there a blood relationship there? Is she the daughter of [one of your parents' siblings]?
>
> *A*. No.

*Q.* So when you say "cousin[,]" she is a good friend of yours[,] correct?

*A.* No, we was [sic] married into the family.

*Q.* Okay. She is your cousin by marriage?

*A.* Yes.

*Q.* Okay. Explain to me how is she a cousin by marriage?

*A.* Her uncle is my uncles [sic].

*Q.* Her uncle was your uncle?

*A.* Yeah.

*Q.* I'm sorry. You['ve] got to clarify this for me. . . . Who is your uncle? What do you mean?

*A.* How can I put it? My aunt married--

*Q.* Wait. Your aunt. Now . . . I think of my mother's good friend as my aunt. When you say "aunt" is that your mother['s sister] or your father's sister?

*A.* My father's sister.

*Q.* Your father's sister. Okay. That's your aunt.

*A.* Right.

\* \* \*

*Q.* Okay. . . . Your aunt is married to [whom]? How is that connection there?

*A.* [Gordon]'s father[,] his brother is married to my aunt, my father's sister.

*Q.* So [Gordon]'s uncle . . . the brother of [Gordon]'s father[,] is married to your aunt?

*A.* Exactly.

*Q.* Okay. So on October 26th, 2012 [the date of the accident] was your father's sister still married to [Gordon]'s uncle?

*A.* Yes.

*Q.* Are they still married[?]

*A.* Yes.

Thus, contrary to her testimony during the first deposition, plaintiff admitted at the second deposition that Gordon was not her blood relative, deeming Gordon her "cousin by marriage."[3]

In September 2014, defendant filed a motion for summary disposition under MCR 2.116(C)(10). Defendant argued that, given plaintiff's testimony at the second deposition, no genuine issue of material fact existed as to the relationship between plaintiff and Gordon. Defendant further argued that (1) plaintiff is admittedly unrelated to Gordon "by blood," (2) she is also, as a matter of law, unrelated to Gordon "by affinity" (*i.e.*, by marriage), and (3) therefore, plaintiff did not qualify as Gordon's "relative" under MCL 500.3114(1). Finally, defendant argued that, because plaintiff was not Gordon's "relative," she was not entitled to PIP benefits under Gordon's policy.

In response, plaintiff argued that (1) she and Gordon are "cousins by affinity," which is a "degree" of familial relation; (2) both the no-fault act and the language of Gordon's policy are unclear regarding "the degree of relation that relatives must share to collect [PIP] benefits under [a] relative's [] policy"; and, therefore, (3) summary disposition in favor of defendant is improper because there is a genuine issue of material fact as to whether plaintiff is entitled to PIP benefits under Gordon's policy, which must be decided by the trier of fact.

The trial court decided the matter without entertaining oral argument. Although the trial court briefly examined the definition of "family member" in Gordon's policy, its analysis focused primarily on the meaning of the term "relative" in MCL 500.3114(1). Noting that the no-fault act does not define "relative," the trial court determined that it must give the term its plain and ordinary meaning. After reviewing dictionary definitions and relevant authority regarding relationships "by affinity," the trial court concluded that plaintiff and Gordon are "cousin[s] by marriage." Observing that it was required to construe the no-fault act liberally in favor of coverage, the trial court then held that "plaintiff is a 'relative' of Gordon according to the plain language of MCL 500.3114(1) and the subject policy language." Accordingly, the trial court denied defendant's motion for summary disposition.

## II. STANDARD OF REVIEW

"This Court reviews de novo a trial court's decision on a motion for summary disposition." *Allen v Bloomfield Hills Sch Dist*, 281 Mich App 49, 52; 760 NW2d 811 (2008). When reviewing a motion for summary disposition under MCR 2.116(C)(10), this Court may only consider, in the light most favorable to the party opposing the motion, the evidence that was before the trial court, which consists of "the 'affidavits, together with the pleadings, depositions, admissions, and documentary evidence then filed in the action or submitted by the parties.' " *Calhoun Co v Blue Cross Blue Shield Michigan*, 297 Mich App 1, 11-12; 824 NW2d 202 (2012), quoting MCR 2.116(G)(5). Under MCR 2.116(C)(10), "[s]ummary disposition is appropriate if

---

[3] She has continued to rely on this relationship as the basis of her claim for the rest of the proceedings.

there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). "This Court is liberal in finding genuine issues of material fact." *Jimkoski v Shupe*, 282 Mich App 1, 4-5; 763 NW2d 1 (2008).

Additionally, "issues of statutory construction are questions of law, which [this Court] review[s] de novo." *Corwin v DaimlerChrysler Ins Co*, 296 Mich App 242, 253; 819 NW2d 68 (2012). Likewise, this Court reviews de novo, as a question of law, "the construction and interpretation of an insurance contract[.]" *Henderson v State Farm Fire & Cas Co*, 460 Mich 348, 353; 596 NW2d 190 (1999).

> The fundamental goal of contract interpretation is to determine and enforce the parties' intent by reading the agreement as a whole and applying the plain language used by the parties to reach their agreement. The goal of statutory interpretation is to determine and give effect to the intent of the Legislature, with the presumption that unambiguous language should be enforced as written. [*Dobbelaere v Auto Owners Ins Co*, 275 Mich App 527, 529-530; 740 NW2d 503 (2007) (quotation marks and citations omitted).]

## III. ANALYSIS

"An insurer who elects to provide automobile insurance is liable to pay no-fault benefits subject to the provisions of the [no-fault] act." *Corwin*, 296 Mich App at 254 (quotation marks and citation omitted; alteration in original); see also MCL 500.3105(1). No-fault policies must be construed, "when reasonably possible," in a manner that complies with the provisions of the no-fault act, *Corwin*, 296 Mich App at 257, but no-fault policies may expand coverage beyond "the mandatory coverages required" by the act, see *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 44; 664 NW2d 776 (2003).

Here, the trial court's decision was based not only on its interpretation of MCL 500.3114(1), but also on its determination that Gordon qualifies as a "family member" under the insurance policy. Accordingly, our analysis of this issue requires two separate, but related, inquiries: (1) whether plaintiff qualifies as a "relative" of Gordon for purposes of MCL 500.3114(1), and (2) if the policy provides broader coverage than that required under MCL 500.3114(1), whether plaintiff qualifies as a "family member" as that term is used in the policy.

We conclude that plaintiff neither qualifies as a "relative" under MCL 500.3114(1) nor as a "family member" under the insurance policy.

### A. MCL 500.3114(1)

Under MCL 500.3114(1), PIP benefits are recoverable by "the person named in the policy, the person's spouse, and a relative of either domiciled in the same household, if the injury arises from a motor vehicle accident." *Stone v Auto-Owners Ins Co (On Remand)*, 307 Mich App 169, 175; 858 NW2d 765 (2014). For purposes of MCL 500.3114(1), a "relative" is a person related "by marriage, consanguinity, or adoption." *Allen v State Farm Mut Auto Ins Co*,

268 Mich App 342, 345; 708 NW2d 131 (2005), overruled on other grounds by *Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich*, 492 Mich 503 (2012); see also *Allstate Ins Co v Tomaszewski*, 180 Mich App 616, 621; 447 NW2d 849 (1989) ("In the insurance context, courts have held that 'relative' means not only blood relative but also relative by marriage.").

It is undisputed that Gordon and plaintiff were not married, were not related by blood, and were not related by adoption at the time of the accident. Thus, the issue here is whether plaintiff qualifies as Gordon's relative "by marriage," *i.e.*, "by affinity." See *Black's Law Dictionary* (10th ed) (defining "relative by affinity" as "[s]omeone who is related solely as the result of a marriage and not by blood or adoption."); *Merriam-Webster's Collegiate Dictionary* (11th ed) (defining "affinity" as a "relationship by marriage").

Michigan statutes and caselaw have long recognized the fundamental difference between consanguineous ("blood") relatives, *i.e.*, individuals related because they share the blood of a common ancestor, and relatives by "affinity," *i.e.*, individuals related by marriage. See, e.g., *People v Zajaczkowski*, 493 Mich 6, 13; 825 NW2d 554 (2012) ("[T]he context in which the term 'by blood' is used in [MCL 750.520b(1)(b)(*ii*)] indicates that it is meant as an alternative to the term 'by affinity.' "); *Berdan v Milwaukee Mut Life Ins Co*, 136 Mich 396, 402; 99 NW 411 (1904) ("By marriage[,] one party holds, by affinity, the same relation to the kindred of the other that the latter holds by consanguinity.") (quotation marks and citation omitted); *Mann v Hyde*, 71 Mich 278, 281-282; 39 NW 78 (1888) (explaining that a decedent's sister-in-law was not a "blood relative" but was, instead, related to the decedent only by affinity). In *Zajaczkowski*, the Michigan Supreme Court reaffirmed this distinction, defining "affinity" as

> the relation existing in consequence of marriage between each of the married persons and the blood relatives of the other, and the degrees of affinity are computed in the same way as those of consanguinity or kindred. A husband is related, by affinity, to all the blood relatives of his wife, and the wife is related, by affinity, to all the blood relatives of the husband. [*Zajaczkowski*, 493 Mich at 13-14, quoting *Bliss v Tyler*, 149 Mich 601, 608; 113 NW 317 (1907).]

In other words, when a couple marries, each spouse becomes related, by affinity of the same degree, to the other spouse's blood relatives.

However, the meaning of "relative by marriage" adopted by the trial court in this case extended affinity principles a step further. The trial court decided that, because plaintiff's paternal aunt is married to Gordon's paternal uncle, plaintiff and Gordon are "cousins by affinity." Thus, the trial court implicitly decided that marriage creates affinity relationships not only between a spouse and the blood relatives of the other spouse, but also between the blood relatives of one spouse and the blood relatives of the other.

We recognize that Michigan caselaw may provide limited support for such an extension of affinity principles beyond their traditional confines. See, e.g., *People v Armstrong*, 212 Mich App 121; 536 NW2d 789 (1995); *Turner v Auto Club Ins Ass'n*, 448 Mich 22, 28; 528 NW2d 681 (1995) (stating the liberal rule of construction applicable to the no-fault act, *i.e.*, "[T]he [no-fault] act is remedial in nature and must be liberally construed in favor of the persons intended to

benefit from it.")  However, given the Supreme Court's analysis in *Zajaczkowski* and its reliance on *Bliss*, we conclude that the trial court's interpretation of MCL 500.3114(1) was erroneous.

In *Armstrong*, 212 Mich App at 123-126, this Court construed "affinity" as the word is used in the second-degree criminal sexual conduct statute, MCL 750.520c(1) ("The actor is related by blood or affinity . . . to the victim.").  At issue in that case was whether a victim of sexual assault and her stepbrother, who was the perpetrator of the assault, qualified as relatives by affinity under MCL 750.520c(1), despite the fact that they did not qualify as such under the Michigan Supreme Court's definition of "affinity" in *Bliss*, 149 Mich at 608 (the definition recently reiterated by the Michigan Supreme Court in *Zajaczkowski*, 493 Mich at 13-14).  *Armstrong*, 212 Mich App at 122-123.  Citing a 1950 decision of the Washington Supreme Court,[4] the *Armstrong* Court concluded that "the term 'affinity' is not capable of precise definition" and further held that, "at common law, whether someone was related to another by affinity depended upon the legal context presented."  *Id.* at 125.  Ultimately, the *Armstrong* Court concluded that, within the statutory context at issue in that case, "the relation between a stepbrother and a stepsister" was one of affinity.  *Id*. at 128-129.

However, based upon our Supreme Court's more-recent opinion in *Zajaczkowski* and its reliance on *Bliss*, we conclude that this Court's expanded definition of affinity in *Armstrong* is not controlling in this case.  In support of its conclusion that the Michigan Supreme Court's definition of "affinity," as announced in *Bliss*, did not bind its decision, the *Armstrong* Court relied on three distinct conclusions of law.  The first two of those conclusions were supported solely by citation to the Washington Supreme Court opinion: (1) "the term 'affinity' is not capable of precise definition," (2) "at common law, whether someone was related to another by affinity depended upon the legal context presented," and (3) "in *Bliss*, our Supreme Court expressly limited the applicability of the definition of affinity that it adopted," leaving that definition limited to "the factual and legal context" of *Bliss*.  *Armstrong*, 212 Mich App at 125-126.  However, although this Court may rely on cases from other jurisdictions as persuasive authority, they are not binding.  *Hiner v Mojica*, 271 Mich App 604, 612; 722 NW2d 914 (2006).  More importantly, since *Armstrong* was decided, the Michigan Supreme Court's *Zajaczkowski* decision reaffirmed the *Bliss* definition of affinity, without mentioning the limiting language emphasized by the *Armstrong* Court.  See *Zajaczkowski*, 493 Mich at 13-14.  Thus, even though *Zajaczkowski* construed the first-degree criminal sexual conduct statute, MCL 750.520b(1)(b)(*ii*), not the no-fault act, we conclude that the Michigan Supreme Court's approval of the *Bliss* definition of affinity in its *Zajaczkowski* opinion demonstrates that this remains the commonly understood meaning of "affinity" under Michigan law and that it should be applied in this case.[5] See *Allard v Allard*, 308 Mich App 536, 552; 867 NW2d 866 (2014), lv gtd 497 Mich 1040 (2015) ("[W]e are bound by the doctrine of stare decisis and have no power to modify . . . our Supreme Court's prior definition[.]").

---

[4] *In re Bordeaux Estate*, 37 Wash 2d 561; 225 P2d 433 (1950).

[5] We also note that plaintiff's relationship with Gordon is significantly more attenuated than the stepsibling relationship at issue in *Armstrong*, which gave rise to the Court's limited expansion of affinity principles.

Therefore, "relative," in the context of MCL 500.3114(1), means a person related "by marriage, consanguinity, or adoption." *Allen*, 268 Mich App at 345. For purposes of MCL 500.3114(1), a relationship by blood is an alternative to a relationship "by marriage," *i.e.*, by affinity. Consistent with the Michigan Supreme Court's decision in *Zajaczkowski*, we conclude that, if the statutory context indicates that relationships "by blood" are intended "as an alternative to [relationships] 'by affinity,' " a relationship by affinity or marriage consists of

> the relation existing in consequence of marriage between each of the married persons and the blood relatives of the other, and the degrees of affinity are computed in the same way as those of consanguinity or kindred. A husband is related, by affinity, to all the blood relatives of his wife, and the wife is related, by affinity, to all the blood relatives of the husband. [*Zajaczkowski*, 493 Mich at 13-14, quoting *Bliss*, 149 Mich at 608.[6]]

The use of this definition is especially appropriate given the *Bliss* Court's further discussion of the reasons why it adopted this definition and declined to adopt another rule:

> *The other and further rule stated, obiter*, . . . to the effect that 'relationship by affinity may also exist between the husband and one who is connected by marriage with a blood relative of the wife,' is based upon very remote, and is opposed to the weight of modern, authority. *We must decline to hold that the fact that two men, unrelated, marry wives who are second cousins, establishes between them a relation by affinity.* [*Bliss*, 149 Mich at 609 (emphasis added).]

Plaintiff seeks PIP benefits from defendant on the theory that she qualifies as Gordon's relative by marriage. However, plaintiff's purported relationship with Gordon, through the marriage of her paternal aunt to Gordon's paternal uncle, does not fall within the common

---

[6] Notably, plaintiff quotes this definition in her brief on appeal. This definition is also consistent with the definition of "relative by affinity" in *Black's Law Dictionary* (10th ed): "A person is a relative by affinity (1) to any blood or adopted relative of his or her spouse, and (2) to any spouse of his or her blood and adopted relatives. Based on the theory that marriage makes two people one, the relatives of each spouse become the other spouse's relatives by affinity."

Other jurisdictions have similarly recognized this conceptualization of relationships by marriage or affinity. See, e.g., 41 Am Jur 2d, Husband and Wife, § 4, pp 16-17; *Sjogren v Metro Prop & Cas Ins Co*, 703 A2d 608, 611 (RI, 1997); *Criminal Injuries Comp Bd v Remson*, 282 Md 168, 183; 384 A2d 58 (1978) ("Affinity is relationship by marriage. It is the connection between a spouse and the blood relatives of the other spouse. . . . [T]he meaning of affinity as the tie between one spouse and the blood relatives of the other spouse is the overwhelming view throughout the country."). But see *Flitton v Equity Fire & Cas Co*, 824 P2d 1132, 1133-1134 (Okla, 1992) (noting that the insurance policy at issue did not use the term "affinity" and concluding that the insured's stepbrother was covered as a "family member" under the policy); *Sigel v New Jersey Mfrs Ins Co*, 328 NJ Super 293, 297; 745 A2d 602 (2000) (following the reasoning in *Flitton* and holding that two stepsiblings were "related by marriage," as that term was used in the insurance policy at issue).

understanding of relative by affinity under Michigan law.  Rather, their relationship is akin to the example in *Bliss*.  Accordingly, like the Court in *Bliss*, we find that two women, who are completely unrelated by consanguinity, but who had other blood relatives marry each other, in this case their respective aunt and uncle, do not share a relationship of "cousins by affinity" that satisfies the definition of "relative" for purposes of MCL 500.3114(1).  See *id*.

Thus, the trial court erred.

## B.  "FAMILY MEMBER" UNDER THE INSURANCE POLICY

As discussed *supra*, no-fault insurance policies may expand coverage beyond "the mandatory coverages required" by the act.  See *Wilkie*, 469 Mich at 44.  Thus, if the language of the policy expanded the scope of PIP coverage beyond that required by MCL 500.3114(1), and plaintiff falls within that expanded scope of coverage, we must affirm the trial court's decision.  See *Neville v Neville (On Remand)*, 295 Mich App 460, 470; 812 NW2d 816 (2012) ("This Court . . . will not reverse when a trial court reaches the right result for a wrong reason.").

"Because a no-fault insurance policy is a contract, the general rules of contract interpretation apply."  *Fuller v GEICO Indem Co*, 309 Mich App 495, 498; 872 NW2d 504 (2015).  "Clear and unambiguous provisions of an insurance policy must be enforced according to their plain meanings."  *Id*.  "As a general rule, where terms having a definite legal meaning are used in a written contract, the parties to the contract are presumed to have intended such terms to have their proper legal meaning, absent a contrary intention appearing in the instrument."  *Prentis Family Foundation v Barbara Ann Karmanos Cancer Inst*, 266 Mich App 39, 58; 698 NW2d 900 (2005) (quotation marks and citations omitted).

As stated *supra*, Part III of the policy at issue, which governs PIP coverage, provides that PIP benefits are payable "to or for an **insured person**."  "**Insured person,**" as used in Part III, is defined as the named insured "or any **family member**[.]"  The general definitions section of the policy provides, "**Family member** means a person related to you [the named insured] by blood, marriage or adoption who is a resident of your household."

The definition of "family member" in the policy is substantively identical to the definition of "relative" provided by this Court in *Allen* for purposes of MCL 500.3114(1).  See *Allen*, 268 Mich App at 345 (defining "relative" as a person related "by marriage, consanguinity, or adoption.").  Accordingly, we conclude that the insurance policy does not expand coverage beyond that required by the no-fault act, see *Wilkie*, 469 Mich at 44, such that the term "family member" under the policy should be construed in the same manner as "relative" for purposes of MCL 500.3114(1), as explained *supra*.  Stated differently, because there is no indication to the contrary, we presume that the parties intended for the terms "family member" and "related . . . [by] marriage" under the policy to have the same meaning as "relative" and "related by marriage" with regard to MCL 500.3114(1).  See *Allen*, 268 Mich App at 345.  Further, because "related . . . [by] marriage" is not defined in the insurance policy, and there is no indication that the parties intended for this term to deviate from the proper legal meaning of "by marriage" or "by affinity," we presume that the parties intended that term "to have [its] proper legal meaning."  *Prentis Family Foundation*, 266 Mich App at 58 (quotation marks and citations omitted).

Therefore, for the same reasons discussed earlier in this opinion, the trial court erred in construing the term "family member" as used in the policy in a manner that includes plaintiff's relationship with Gordon.

## IV. CONCLUSION

Because established Michigan law does not recognize the purported "cousins by marriage" relationship between plaintiff and Gordon, the trial court erred in holding that plaintiff was Gordon's "relative" and thereby entitled to PIP benefits under MCL 500.3114(1) and the no-fault policy issued by defendant.

Reversed and remanded for entry of an order granting summary disposition in favor of defendant.

/s/ Christopher M. Murray
/s/ Cynthia Diane Stephens
/s/ Michael J. Riordan