*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PATRICK MCCOURT,

      Plaintiff-Appellant,

v

STUART LEBENBOM,

      Defendant,

and

ALLSTATE INSURANCE COMPANY,

      Defendant-Appellee.

UNPUBLISHED
May 23, 2019

No. 343003
Oakland Circuit Court
LC No. 2016-154361-NI

Before: SAWYER, P.J., and CAVANAGH and SERVITTO, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order of dismissal of defendant Stuart Lebenbom in this first-party no-fault action. We reverse and remand.

Plaintiff sustained injuries in an automobile accident on January 24, 2016. Plaintiff filed a complaint against defendant Allstate Insurance Company ("defendant") claiming entitlement to first-party benefits under his insurance policy. The trial court granted summary disposition in favor of defendant pursuant to MCR 2.116(C)(10), concluding that plaintiff's claim for benefits was barred as a matter of law because plaintiff had committed fraud.

Plaintiff argues that the trial court committed error when it granted defendant's motion for summary disposition because there is a genuine issue of material fact as to whether plaintiff committed fraud in regard to his claims for household replacement services and his preaccident medical history. We agree.

A trial court's decision on a motion for summary disposition is reviewed de novo. *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5-6; 890 NW2d 344 (2016). A motion for summary disposition under MCR 2.116(C)(10) challenges the "factual adequacy of a complaint on the

-1-

basis of the entire record, including affidavits, depositions, admissions, or other documentary evidence." *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 115; 839 NW2d 223 (2013). A trial court's grant of summary disposition under MCR 2.116(C)(10) is proper when the evidence, "viewed in the light most favorable to the nonmoving party, show[s] that there is no genuine issue as to any material fact and the moving party is therefore entitled to judgment as a matter of law." *Lowrey*, 500 Mich at 5. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Gorman*, 302 Mich App at 116 (citation omitted). " 'This Court is liberal in finding genuine issues of material fact.' " *Lewis v Farmer Ins Exch*, 315 Mich App 202, 209; 888 NW2d 916 (2016), quoting *Jimkoski v Shupe*, 282 Mich App 1, 5; 763 NW2d 1 (2008).

The no-fault insurance policy at issue contained a general fraud exclusion provision, which provided: "We may not provide coverage for any insured who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy."

"Reliance on an exclusionary clause in an insurance policy is an affirmative defense; therefore, defendant has the burden of proof." *Shelton v Auto-Owners Ins Co*, 318 Mich App 648, 657; 899 NW2d 744 (2017). "An insurance company has the burden to prove that one of the policy's exclusions applies." *Id*. (citation and quotation marks omitted). "Thus, to obtain summary disposition the insurer must show that there is no question of material fact as to any of the elements of its affirmative defense." *Id*. This Court has set forth the following requirements for establishing fraud:

> In order to establish that an individual committed fraud, the insurer must establish (1) that the individual made a material misrepresentation, (2) that the representation was false, (3) that when the individual made the representation he or she knew it was false or made it with reckless disregard as to whether it was true or false, (4) that the misrepresentation was made with the intention that the insurer would act upon it, and (5) that the insurer acted on the misrepresentation to its detriment. [*Meemic Ins Co v Fortson*, 324 Mich App 467, 473-474; 922 NW2d 154 (2018).]

"A statement is material if it is reasonably relevant to the insurer's investigation of a claim." *Bahri v IDS Property Cas Ins Co*, 308 Mich App 420, 425; 864 NW2d 609 (2014). "Generally, whether an insured has committed fraud is a question of fact for a jury to determine." *Meemic*, 324 Mich App at 473. "However, under some circumstances, a trial court may decide as a matter of law that an individual committed fraud." *Id*.

## I. REPLACEMENT SERVICES

In regard to the misrepresentations provided in plaintiff's replacement services forms, plaintiff argues that the trial court erred in finding that plaintiff committed fraud because the misinformation was merely a mistake on the part of his service provider and roommate, Lonnie Adams, in not knowing how to properly complete the forms due to the generic directions provided on the forms. Defendant contends that plaintiff submitted fraudulent claims for

household replacement services because plaintiff claimed benefits for services that Adams would have performed even if plaintiff had not been injured. MCL 500.3107(1)(c) provides that personal protection insurance benefits are payable for:

> (c) Expenses not exceeding $20.00 per day, reasonably incurred in obtaining ordinary and necessary services in lieu of those that, if he or she had not been injured, an injured person would have performed during the first 3 years after the date of the accident, not for income but for the benefit of himself or herself or of his or her dependent.

Replacement services forms were submitted to defendant for the months of January, February, March, April, May, and July 2016. On the forms, Adams indicated that he cooked for plaintiff every day, he walked plaintiff's dog almost every day, and he did the laundry every Tuesday and Saturday. Adams testified that prior to the accident, generally, he did 70% of the household chores and plaintiff did 30% of the household chores. However, Adam's also testified that, prior to the accident, he did all of the cooking, laundry, and he also walked plaintiff's dog, and after plaintiff was injured, he continued to perform these services. Plaintiff testified, however, that prior to the accident, there was no specific arrangement between Adams and plaintiff in regard to household chores, but rather, they split the chores in half depending on who was available. Plaintiff also testified that prior to the accident, he did all household chores that involved his "personal business." Plaintiff did not specifically indicate what chores those were. Plaintiff testified that after the accident, Adams took over 90% of the household chores because plaintiff was only able to do light cleaning around the house.

In *Candler v Farm Bureau Mut Ins Co of Mich*, 321 Mich App 772, 776; 910 NW2d 666 (2017), this Court considered a plaintiff's fraudulent claim for household replacement services. The plaintiff, after being struck by a hit-and-run driver, filed a claim for PIP benefits, and in support of his claim, he submitted to the defendant replacement service calendars for the months of August, September, and October 2015, which were supposedly signed by the plaintiff's brother, Andrew. *Id*. The calendars reflected that Andrew had provided care for the plaintiff during those three months. *Id*. During discovery, the defendant learned that Andrew had stopped providing services for the plaintiff in July 2015, and after that time, the plaintiff moved from Rochester to Detroit to live with his girlfriend, who started to provide the replacement services. *Id*. At the trial court, the plaintiff's counsel admitted that the plaintiff had signed Andrew's name to the calendars. *Id*. The defendant moved for summary disposition arguing that "MCL 500.3173a(2) precluded the plaintiff from recovering any PIP benefits because of the false statements that were provided." *Id*. The trial court denied the defendant's motion for summary disposition. *Id*. On appeal, this Court concluded that the "plaintiff knew that the statement contained false information, which concerned a fact or thing material to the claim." *Id*. at 781. In support of its conclusion, this Court concluded that the evidence established that the plaintiff knew that the calendars he submitted were not correct, he knew that he had moved in with his girlfriend, who provided the replacement services during the three months in question, and his counsel conceded that the plaintiff had signed or forged Andrew's name. *Id*. at 781. The Court ultimately held that, based on evidence, "[n]o reasonable jury could conclude that plaintiff, despite the presence of a head injury, was not aware that he was submitting false information that was material to his claims for no-fault benefits." *Id*. at 781-782.

Here, defendant argues that it is apparent that plaintiff knew that Adams had provided false information in the replacement services forms, or at a minimum, plaintiff recklessly allowed incorrect claims to be filed on his behalf without verifying the accuracy of the claims. On appeal, plaintiff does not dispute that Adams listed services on the forms that he had provided prior to plaintiff being injured. However, there is no record evidence that plaintiff in fact knew that Adams had provided false information at the time the forms were submitted to defendant. Adams himself was forthcoming in his deposition and described all of the household chores that he completed prior to the accident and after. There was no indication from Adam's testimony that he was attempting to misrepresent the services that he provided for plaintiff prior to the injury. Moreover, Adams testified that he completed the replacement services forms and then submitted them to plaintiff's attorney. During plaintiff's deposition, plaintiff also indicated that Adams was the person who completed the replacement services forms. Adams also personally signed the forms. The forms were not signed by plaintiff. It is not clear whether plaintiff reviewed the forms; therefore, there is no record evidence that plaintiff in fact knew specifically what Adams was claiming in the forms, or that Adam's claims were contrary to MCL 500.3107(1)(c). This case is not analogous to *Candler*, in which it would be unreasonable for a jury to find that the plaintiff therein did not know that his statements contained false information after the plaintiff lied about who provided his services and then forged his brother's signature in order to receive benefits. Here, there is a question of fact as to whether plaintiff was aware of the specific services that Adams claimed or that the forms contained false information. Thus, there is a genuine issue of material fact as to whether plaintiff himself made a false misrepresentation with reckless disregard for its truth or falsity, and with the intention that the defendant rely on it.

## II. PRIOR MEDICAL HISTORY

Plaintiff also contends that the trial court erred in granting defendant's motion for summary disposition on the ground that plaintiff fraudulently misrepresented his medical history. Defendant argues that the statements that plaintiff made at his deposition contradicted his medical records, and thus, plaintiff committed fraud. Specifically, defendant argues that plaintiff committed fraud by misrepresenting the medical conditions that led plaintiff to apply for Social Security Disability (SSD) benefits in March 2010. Plaintiff testified that depression and anxiety disorders were the conditions that led him to apply for SSD. When asked by defense counsel whether neck pain, back pain, or pain of any other extremities caused plaintiff to apply for SSD, plaintiff responded "No." Defendant asserts that plaintiff's negative response was a material misrepresentation because plaintiff's SSD application states that he took medication for "severe body aches and pain." Defendant also contends that a letter from Dr. Stephen Swetech in support of plaintiff's SSD benefits application, which stated that plaintiff had arthritis of the cervical and lumbar spine, is further evidence that plaintiff suffered from physical ailments, and thus, plaintiff misrepresented his medical history.

Defendant's argument regarding plaintiff's SSD benefits application is without merit. Nowhere in plaintiff's SSD application did it specifically state that plaintiff suffered from back or neck pain or specific physical ailments; the application does not indicate why plaintiff was suffering from severe aches and pains or whether those pains were the result of physical conditions. Moreover, Dr. Swetech's letter does not establish, as a matter of law, that plaintiff fraudulently misrepresented his medical history. During plaintiff's deposition, plaintiff was

-4-

asked whether any complaints of back pain, neck pain, or pain of other extremities caused plaintiff to apply for disability. The fact that Dr. Swetech stated that plaintiff had arthritis of the cervical and lumbar spine as support for plaintiff's application does not establish that plaintiff was suffering from pain of the cervical and lumbar spine when he applied for SSD benefits, that the condition was one that led plaintiff himself to apply for SSD benefits, or that plaintiff intentionally withheld this information with the intent that defendant would rely on it. Moreover, there is no evidence that defendant replied on this information to its detriment. Any inconsistency between plaintiff's deposition testimony and his SSD application created a question of fact as to whether plaintiff's conduct was fraudulent.

Defendant also asserts that there are inconsistencies between plaintiff's testimony regarding his back problems and his medical records. Defendant points to a March 16, 2010 medical record. The medical record stated that plaintiff had a history of low back pain, and an x-ray had revealed that plaintiff had "multilevel degenerative changes with mild anterior wedging of T12 and L1 and minimal anterior wedging of L2." Moreover, a physical therapy record from January 10, 2011 indicated that plaintiff had low back pain, and a medical record from June 20, 2012 indicated that plaintiff had degenerative joint disease. These medical records created a question of fact as to whether plaintiff committed fraud. During plaintiff's deposition testimony he was forthcoming about having prior back pain, and admitted that he had sought treatment for back problems in the past and had been prescribed Motrin to treat the pain. Moreover, the record indicating that plaintiff had degenerative joint disease was handwritten on the bottom of a form, and the record did not indicate that the condition was specifically related to plaintiff's back. Thus, these medical records do not establish that plaintiff knowingly or with reckless disregard misrepresented his history of back problems.

Defendant also asserts that plaintiff's deposition testimony regarding his history of neck problems contradicts plaintiff's medical records. During plaintiff's deposition testimony, plaintiff denied that, prior to the accident, he had pain in his neck or had sought treatment for neck pain. However, plaintiff's medical records indicate that, on March 16, 2010, plaintiff presented to the hospital with neck pain, and an x-ray revealed minimal degenerative changes. Therefore, plaintiff's statement that he had never had neck pain was not accurate. This Court has stated that "[f]raud or false swearing implies something more than mistake of fact or honest misstatements on the part of the insured." *Mina v Gen Star Indemnity Co*, 218 Mich App 678, 686; 555 NW2d 1 (1996), rev'd in part on other grounds 455 Mich 866 (1997). Thus, solely based on this one medical record, it is not clear whether plaintiff knowingly provided false information or whether it was an honest mistake. Moreover, there is no evidence that plaintiff intentionally made this statement with the intent that defendant rely on it. Plaintiff provided defendant with Dr. Swetech's name, who was plaintiff's treating physician when plaintiff presented with neck pain, and plaintiff was forthcoming about Dr. Swetech being plaintiff's doctor for approximately 25 years prior to the accident, thus covering the period of time that plaintiff experienced the neck pain. Moreover, due to plaintiff's admissions, defendant was able to obtain plaintiff's medical records and identify that plaintiff had previously had neck pain. It is also unclear from the record whether defendant relied on the inaccurate statement to its detriment. Thus, plaintiff's denial of past neck pain created a question of fact for the jury as to whether plaintiff committed fraud.

In the lower court, defendant argued that plaintiff's deposition testimony regarding a prior brain injury contradicted plaintiff's medical records. Plaintiff testified that he had not been diagnosed with a closed head injury, a concussion, a traumatic brain injury, or head trauma prior to the car accident. Plaintiff's medical records indicate that plaintiff underwent two MRIs of his brain in May 2010. The fact that plaintiff underwent two MRIs of his brain does not contradict his testimony that he had not been diagnosed with one of the specific brain injuries about which defense counsel asked. Plaintiff underwent one MRI due to a possible aneurysm, but no aneurysm was detected; the other MRI was performed due to hearing loss and blurry visions, and the MRI revealed small vessel disease.

However, when plaintiff was asked during his deposition testimony whether he had undergone an MRI of his brain prior to the accident, he responded "No." However, the medical records indicate that two separate MRIs of the brain were performed in May 2010. Nonetheless, plaintiff's incorrect statement does not establish fraud as a matter of law. As stated earlier, plaintiff was under the care of Dr. Swetech at the time the MRIs were performed, and plaintiff readily disclosed that Dr. Swetech was his doctor during this time. It is also unclear whether defendant relied on the statement to its detriment. Thus, there is a genuine issue of material fact as to whether plaintiff committed fraud in regard to the inconsistencies between his testimony and medical records regarding past MRIs.

In the lower court, defendant also asserted that plaintiff misrepresented his history of leg pain because a handwritten note in a medical record from June 20, 2012, indicated that plaintiff had "leg numbness." There is no explanation in plaintiff's medical records what specifically was meant by leg numbness, whether the numbness was a symptom of a condition or illness, or whether the numbness resulted in pain. Thus, the record evidence does not establish that plaintiff knowingly provided false information when he testified that he did not have any prior leg pain.

In conclusion, because "summary disposition is rarely appropriate in cases involving questions of credibility, intent, or state of mind," *In re Handelsman*, 266 Mich App 433, 438; 702 NW2d 641 (2005), and because the question of fraud is generally a question of fact for the jury, *Meemic*, 324 Mich App at 473, the record evidence did not support, as a matter of law, that plaintiff committed fraud to the extent that the fraud exclusion clause of the insurance contract barred plaintiff's claim for benefits. Thus, a question of fact exists for the jury to decide.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ David H. Sawyer
/s/ Mark J. Cavanagh
/s/ Deborah A. Servitto

-6-