*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DAMONTE ANTWAN CATER,

UNPUBLISHED
February 06, 2026
12:55 PM

Plaintiff-Appellant,

v

No. 370744
Wayne Circuit Court
LC No. 23-001089-NI

ERIC MYERS POWELL, KAWANA GETON
FRENCH, and CITIZENS INSURANCE
COMPANY OF THE MIDWEST,

Defendants,

and

CITIZENS UNITED RECIPROCAL EXCHANGE,

Defendant-Appellee.

Before: BORRELLO, P.J., and MARIANI and TREBILCOCK, JJ.

PER CURIAM.

In this action under the no-fault act, MCL 500.3101 *et seq*., plaintiff appeals as of right the trial court's order granting summary disposition in favor of defendant-appellee Citizens United Reciprocal Exchange (CURE). For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

This case arises out of a November 1, 2022 motor vehicle accident that occurred around 11:00 p.m.[1] On that date, a vehicle driven by plaintiff and a vehicle driven by defendant Eric Powell collided at an intersection. According to plaintiff, he entered the intersection with a green

---

[1] Although the police report indicated that the accident occurred on November 1, plaintiff thought it occurred on November 2.

-1-

light and the other vehicle ran a red light, striking plaintiff's vehicle. Plaintiff claimed to have suffered injuries to his neck, back, and shoulders in the accident.

Plaintiff did not have a valid driver's license and had never held a Michigan driver's license. He also did not have a policy of automobile insurance in his name. The vehicle that plaintiff was driving belonged to plaintiff's girlfriend, defendant Kawana French. Plaintiff indicated that he lived with French at the time of the accident, but French testified that plaintiff did not start living with her permanently until after the accident even though he had been "staying over" two or three days per week before the accident. Plaintiff and French were not married.

On the date of the incident, French requested that plaintiff operate her vehicle to transport her daughter from work. Plaintiff asserted that he understood French's request as implicit authorization to use the vehicle for that purpose. In his deposition testimony, plaintiff acknowledged that he failed to disclose to French his lack of a valid driver's license. French testified that she granted plaintiff permission to operate her vehicle on the date in question and that she had no knowledge of plaintiff's unlicensed status until after the accident. Both plaintiff and French initially testified that plaintiff had never previously operated French's vehicle. French's testimony, however, revealed material inconsistencies: she stated that plaintiff transported her to work at approximately 6:30 p.m. to retain possession of the vehicle for the purpose of retrieving her daughter at 10:00 p.m., and that plaintiff had already returned French's daughter to the residence prior to the accident. French could not explain plaintiff's continued operation of the vehicle at the time of the accident. French subsequently contradicted her earlier testimony by admitting in her deposition that plaintiff had operated the vehicle "once or twice" previously.

French had a policy of insurance with CURE for the vehicle that was involved in the accident. As relevant to the issue on appeal, this policy provided as follows:

**PART C - UNINSURED MOTORISTS COVERAGE INSURING AGREEMENT**

**A.** We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury":

**1.** Sustained by an "insured"; and

**2.** Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle".

Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

**B.** "Insured" as used in this Part means:

**1.** You or any "family member";

**2.** Any other person "occupying" "your covered auto"; or

**3.** Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in **1.** or **2.** above.

**C.** "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:

**1.** To which no bodily injury liability bond or policy applies at the time of the accident.

* * *

**EXCLUSIONS**

* * *

**B.** We do not provide Uninsured Motorists Coverage for "bodily injury" sustained by any "insured":

* * *

**3.** Using a vehicle without a reasonable belief that that "insured" is entitled to do so. This exclusion **(B.3.)** does not apply to a "family member" using "your covered auto" which is owned by you.

Plaintiff brought this action against Powell, French, Citizens Insurance Company of the Midwest, and CURE. However, the claims against French were voluntarily dismissed without prejudice by plaintiff shortly after the complaint was filed. Plaintiff pursued his remaining claims of negligence against Powell, outstanding no-fault benefits from Citizens as the insurance carrier assigned through the Michigan Automobile Insurance Placement Facility, and uninsured/underinsured motorist benefits from CURE as the insurer of the vehicle plaintiff was driving.

CURE moved for summary disposition under MCR 2.116(C)(10), arguing that plaintiff was barred from recovery as a matter of law because he never had a valid driver's license and therefore could not have reasonably believed that he could have lawfully operated the vehicle. CURE argued that the right to uninsured motorist coverage was defined by the insurance policy since uninsured motorist coverage was not statutorily required and that French's policy excluded occupants from coverage who used the insured vehicle without a reasonable belief of being entitled to do so.

Citizens also moved for summary disposition under MCR 2.116(C)(10) on similar grounds. Citizens argued that plaintiff was barred from receiving personal protection insurance (PIP) benefits pursuant to MCL 500.3113(a) and MCL 500.3173 because he was willfully operating the vehicle illegally without a driver's license and thus could not reasonably believe that he had lawfully taken the vehicle.

Plaintiff opposed the motions for summary disposition. With respect to CURE's motion, plaintiff argued that the exclusionary language in CURE's policy did not disqualify plaintiff from uninsured motorist benefits because the policy only required plaintiff to have a reasonable belief that he was entitled to *use* the vehicle and French had affirmatively given plaintiff permission to use the vehicle. Plaintiff argued that whether he had a driver's license was irrelevant to this issue. Plaintiff attached an affidavit by French in which she stated that she still would have given plaintiff permission to drive her vehicle even if she had known that he did not have a driver's license.

With respect to the motion by Citizens, plaintiff argued that even if his *use* of the vehicle was questionable, he did not unlawfully *take* the vehicle because French asked him to use the vehicle and thus gave him permission to use it.

At the hearing on the motions, the trial court ruled from the bench. The court granted CURE's motion for summary disposition, ruling that plaintiff could not recover uninsured motorist benefits under the policy because he was unlicensed and was using the vehicle without any lawful ability to do so and, thus, without a reasonable belief that he was entitled to use the vehicle. The trial court also granted Citizens' motion for essentially the same reason, although the court relied on the statutory provision instead of the policy because the claim against Citizens involved statutorily required PIP benefits.

The trial court entered orders consistent with its rulings and dismissing the claims against CURE and Citizens with prejudice. The trial court entered another order granting plaintiff's voluntary dismissal without prejudice of the claims against Powell, which the court indicated was a final order closing the case.

Plaintiff appealed. Although plaintiff's initial appellate brief indicated that he was challenging the trial court's rulings relative to both CURE and Citizens, plaintiff subsequently resolved his claims with Citizens, and Citizens was dismissed as a party to this appeal by stipulation. Plaintiff's claim against CURE is therefore the only matter before this Court on appeal.

## II. STANDARD OF REVIEW

This Court reviews a trial court's summary disposition ruling de novo. *Lewis v Farmers Ins Exch*, 315 Mich App 202, 208; 888 NW2d 916 (2016). Summary disposition is warranted under MCR 2.116(C)(10) if "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). Issues of contract interpretation are also reviewed de novo. *Lewis*, 315 Mich App at 209.

## III. ANALYSIS

The issue presented by this appeal is whether plaintiff may recover uninsured motorist coverage benefits[2] under French's CURE insurance policy where he was injured while driving French's vehicle with her express permission even though plaintiff did not hold a valid driver's license.

"The no-fault act permits an insurer to avoid coverage of PIP benefits under certain enumerated circumstances, such as those listed in MCL 500.3113." *Ahmed v Tokio Marine America Ins Co*, 337 Mich App 1, 9; 972 NW2d 860 (2021) (quotation marks and citation omitted). Pursuant to MCL 500.3113(a), a "person is not entitled to be paid personal protection insurance benefits for accidental bodily injury if at the time of the accident . . . [t]he person was willingly operating or willingly using a motor vehicle or motorcycle that was taken unlawfully, and the person knew or should have known that the motor vehicle or motorcycle was taken unlawfully."[3] This "disqualification applies to any person (1) 'willingly operating or willingly using a motor vehicle or motorcycle' that (2) was unlawfully taken by someone, and (3) the person seeking benefits 'knew or should have known' that the motor vehicle was taken unlawfully." *Ahmed*, 337 Mich App at 10.

For purposes of MCL 500.3113, there is a clear distinction between *using* and *taking*. *VHS of Mich, Inc v State Farm Mut Auto Ins Co*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 365479); slip op at 5. "The first level of inquiry when applying MCL 500.3113(a) always concerns whether the taking of a vehicle was unlawful, and if the taking was lawful, the inquiry ends because the statute is inapplicable." *Id*. at ___; slip op at 4 (quotation marks and citation omitted). The phrase "taken unlawfully" has been construed to mean a situation in which the individual obtains possession of the vehicle in violation of Michigan law or without the vehicle owner's authorization. *Id*. at ___; slip op at 5. Thus, "there must be a nexus between the unlawful act and the attainment of possession," and "a mere *use* of the vehicle that is unlawful but that is unconnected to attaining possession does not satisfy the definition of 'taken unlawfully' for purposes of MCL 500.3113(a) . . . ." *Id*.

In *VHS*, this Court held that the injured party's unlawful actions of driving a vehicle without a valid driver's license and while intoxicated, which occurred after the injured party's customer had left the vehicle with the injured party to make repairs, did not constitute an "unlawful taking" for purposes of MCL 500.3113(a) because the unlawful acts had no connection to the manner in which the injured party came to possess the vehicle. *Id*. at ___; slip op at 2, 9. This Court reasoned:

> [T]he pertinent question in determining whether there was an unlawful taking under MCL 500.3113(a) is whether there was a voluntary transfer of possession of the vehicle, even if for a temporary period of time, and not whether the subsequent use of the vehicle by the person seeking PIP benefits exceeded the scope of the use

[2] Although plaintiff's complaint asserted a claim for uninsured or underinsured motorist coverage, the summary disposition proceedings in the trial court and the appellate briefing have framed this issue as a claim for uninsured motorist coverage. Plaintiff's appellate brief does not mention underinsured motorist coverage. Thus, only uninsured motorist coverage is at issue.

[3] Subsection (a) was not affected by the recent amendment to MCL 500.3113. See 2024 PA 224.

authorized by the owner. This is consistent with the well-settled principle that there is a distinction between a "use" and a "taking" in this context. [*Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich*, 492 Mich 503, 517 n 24; 821 NW2d 117 (2012)]; [*Monaco v Home-Owners Ins Co*, 317 Mich App 738, 749; 896 NW2d 32 (2016)]; accord *Ahmed*, 337 Mich App at 13. When possession has been transferred voluntarily, even if temporarily, there has been no "taking." Thus, in those circumstances, a person's subsequent use, even if not authorized by the owner or if otherwise unlawful, does not constitute an unlawful taking under MCL 500.3113(a) because there is no nexus between that unlawful conduct and how the person gained possession of the vehicle. [*Landon v Titan Ins Co*, 251 Mich App 633, 641-646; 651 NW2d 93 (2002)]; [*State Farm Mut Auto Ins Co v Hawkeye-Security Ins Co*, 115 Mich App 675, 681-682; 321 NW2d 769 (1982)]; *Monaco*, 317 Mich App at 748-750. [*VHS*, ___ Mich App at ___; slip op at 8-9.]

However, although the above framework applies when the injured party is seeking PIP benefits, the issue here involves whether plaintiff may recover uninsured motorist benefits. The analytical framework is therefore somewhat different because uninsured motorist coverage—unlike PIP coverage—is optional and is not mandated by the no-fault act. *Meemic Ins Co v Fortson*, 506 Mich 287, 297-298; 954 NW2d 115 (2020); *Rory v Continental Ins Co*, 473 Mich 457, 465-466; 703 NW2d 23 (2005). Whereas the no-fault act governs coverage mandated by the act, optional coverages such as uninsured motorist coverage are controlled by the insurance policy. *Williams v Farm Bureau Mut Ins Co of Mich*, 335 Mich App 574, 578-579; 967 NW2d 869 (2021). The "rights and limitations" of optional uninsured motorist coverage "are purely contractual and are construed without reference to the no-fault act." *Rory*, 473 Mich at 465-466.

This Court reviews an insurance policy as it would any other contract. *Meemic*, 506 Mich at 296. "In ascertaining the meaning of a contract, we give the words used in the contract their plain and ordinary meaning that would be apparent to a reader of the instrument." *Rory*, 473 Mich at 464. If the contract is unambiguous, it must be enforced as written. *Farm Bureau Mut Ins Co of Mich v Nikkel*, 460 Mich 558, 566; 596 NW2d 915 (1999).

Here, the insurance policy at issue stated in relevant part that uninsured motorist coverage was not provided for any insured who was "[u]sing a vehicle without a reasonable belief that that 'insured' is entitled to do so." The key word to understand relative to this provision is "entitled," which is not defined by the policy. This Court may consult a dictionary to ascertain the plain and ordinary meaning of a word in a contract. *Vushaj v Farm Bureau Gen Ins Co of Mich*, 284 Mich App 513, 515; 773 NW2d 758 (2009).

According to *Black's Law Dictionary*, the word "entitle" means, "To grant a legal right to or qualify for." *Black's Law Dictionary* (12th ed). Here, it is undisputed that even if plaintiff had French's permission to use her vehicle, plaintiff did not have a valid driver's license. MCL 257.301(1) provides in relevant part that "an individual shall not drive a motor vehicle on a highway in this state unless that individual has a valid operator's or chauffeur's license with the appropriate group designation and indorsements for the type or class of vehicle being driven or towed." Plaintiff thus did not have the legal right to drive a vehicle in Michigan, and plaintiff therefore could not have held a reasonable belief that he was actually "entitled" to use French's vehicle. Although defendant would have this Court assign great weight to the "permission"

granted him by French, while French could authorize plaintiff to use her vehicle relative to her personal ownership rights in the vehicle, she could not provide plaintiff with any authority to drive it on the public roads because that privilege is governed by statute, not by French. MCL 257.301(1).

This Court previously reached the same conclusion under analogous factual circumstances in *Huggins v Bohman*, 228 Mich App 84; 578 NW2d 326 (1998). In that case, this Court addressed the question whether a garnishee defendant insurance company had a meritorious defense such that it was entitled to have a default set aside. *Id*. at 87-88. The litigation underlying the garnishment action involved an automobile accident in which a 13-year old was operating a vehicle and the injured plaintiff had sued the 13-year-old operator, as well as the vehicle's owner and permissive user. *Id*. at 85-86. The garnishee defendant insurance company argued that it had a meritorious defense because it was not liable for the judgment against the 13-year-old's guardian ad litem, although it had issued an insurance policy to the 13-year-old's father, because the 13-year-old was not "entitled" to drive the vehicle for purposes of the insurance policy and that the accident was therefore specifically excluded under the insurance contract. *Id*. at 88. The contract contained an exclusion stating, "We do not provide Liability Coverage for any person: Using a vehicle without a reasonable belief that person is entitled to do so." *Id*. This Court held as follows:

> The critical issue here is whether [the 13-year-old] had a "reasonable belief" that she was "entitled" to drive the . . . automobile. . . .
>
> We conclude that garnishee defendant's policy is not ambiguous and should be enforced as written. Under its plain terms, a nonowner driver must be "entitled" to drive the automobile. "Entitle," as defined in Webster's Ninth New Collegiate Dictionary (1991) means "to furnish with proper grounds for seeking or claiming something." Plaintiff contends that to "have permission" and to "be entitled" are the same. We disagree. "Permission" is defined in Webster's Ninth New Collegiate Dictionary (1991) as "formal consent." Although consent is a proper ground, it is not the only ground. It necessarily follows that mere permission to drive the automobile was inadequate.
>
> Even viewing the facts in the light most favorable to plaintiff (i.e., assuming that [13-year-old] Frazier had permission to drive the automobile), we find that rational minds would agree that Frazier, an underage, unlicensed, inexperienced driver, was not "entitled" to drive the automobile. She had only one of the grounds required to drive the automobile, permission. However, without a driver's license, she did not have all the proper grounds that entitle one to drive a vehicle. Without a driver's license she could not reasonably believe that she had met all the requirements necessary to entitle her to drive the . . . automobile. [*Id*. at 88-89.]

As in *Huggins*, here, plaintiff has failed to proffer a factual scenario wherein plaintiff, absent a valid driver's license, could have reasonably maintained a good-faith belief that he was entitled to operate French's vehicle. *Id*. Accordingly, the trial court properly granted summary disposition in favor of CURE. *Id*.

Affirmed. Defendant having prevailed is entitled to costs. MCR 7.219(A).

/s/ Stephen L. Borrello
/s/ Philip P. Mariani
/s/ Christopher M. Trebilcock