MONTGOMERY v HAWKEYE SECURITY INSURANCE COMPANY

1. WORDS AND PHRASES—RESIDENT—INSURANCE.

Interpretation of the phrase "resident of his household" used in a homeowner's insurance policy to mean only those actually dwelling in or occupying the physical premises described in the policy is a mechanical determination which is inappropriate for use as a general rule for the varied fact situations which may develop.

2. WORDS AND PHRASES—RESIDENCE—RESIDENT.

The terms "residence" and "resident" have no fixed meaning in the law; their meanings vary depending upon the context in which they are used and upon the surrounding circumstances.

3. EVIDENCE—ADMISSIBILITY—RESIDENCE.

It was not improper to admit as bearing on residence evidence which was not directly concerned with the date of an incident and residence on that date, since residence is to be determined within the context of numerous possible factual settings.

4. INSURANCE—DUTY TO DEFEND—QUESTION OF FACT.

An insurer has the duty to defend a lawsuit against its insured under a policy term which provides for such defense, where there is a dispute as to facts and the insured's acts might be found to be negligent.

5. INSURANCE—DUTY TO DEFEND—INTENTIONAL ACT.

An insurer cannot refuse to defend a lawsuit against an insured on the ground that the insured's act which provoked the suit was intentional and thus excluded by the policy, where the intentional character of the act is a mixed question of law and fact, and where the insurance policy provides that the insurer will defend suits for damages payable under the policy even if the allegations therein are groundless, false, or fraudulent; the

question whether the insurer has a duty to defend should not rest solely on the form of pleading of the plaintiff.

6. INSURANCE—EXCLUSION—INTENTIONAL ACT—QUESTION OF FACT.
    Whether the intentional act exclusion of an insurance policy will ultimately preclude payment by an insurer for a bodily injury allegedly inflicted upon a plaintiff by an insured can be determined by the trier of fact in the plaintiff's action for assault and battery, where the facts are disputed and the acts complained of could be either intentional, negligent, or not actionable at all depending on the outcome of the fact finder's determination.

Appeal from Mecosta, Harold Van Domelen, J. Submitted Division 3 January 9, 1974, at Grand Rapids. (Docket No. 16550.) Decided March 29, 1974. Leave to appeal denied, 392 Mich —.

Complaint by Larry D. Montgomery and others against Hawkeye Security Insurance Company for declaratory relief, seeking to compel defendant to defend a lawsuit brought against plaintiff under a policy of homeowner's insurance. Relief granted. Defendant appeals. Affirmed.

*Donley, Walz, Fershee & Jordan,* for plaintiffs.

*Phelps, Linsey, Strain & Worsfold,* for defendant.

Before: R. B. BURNS, P. J., and BRONSON and VAN VALKENBURG,* JJ.

PER CURIAM. On October 18, 1969, plaintiff Larry Doyle Montgomery was involved in an incident which resulted in a civil action for assault and battery being filed against him in a district court. Larry, claiming coverage under a homeowner's policy issued in the name of his parents, the

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

other plaintiffs herein, requested the insurer, defendant Hawkeye Security Insurance Company, to defend. Hawkeye refused, claiming that Larry was not an "insured" within the policy coverage for "residents of his [the *named* insureds'] household" and that they were not liable to either defend *or* pay for "bodily injury or property damage caused intentionally by or at the direction of the insured".

The instant action is one for declaratory relief brought to determine whether Larry was an insured and whether the insurer had a duty to defend and pay. In a well-reasoned opinion subsequent to a full trial before the court, the trial judge found that Larry was an insured and that the insurer had a duty to defend. Hawkeye appeals of right.

At the time of the incident Larry was 22 and a full-time student at Ferris State in Big Rapids, Michigan. Larry had lived at home with his parents in Flint except when in the service or, in this case, away at school. Larry's education at Ferris was being financed by G.I. benefits and support from his parents. His parents paid the rent on Larry's apartment at school.

The insurer Hawkeye would have us interpret the policy phrase "residents of his household" to mean only those actually dwelling in or occupying the physical premises named in the policy. Further, if one lived in two separate "households" during any given period appellant would then base the result on the amount of time spent at each. See: *Wilkins v Ann Arbor City Clerk,* 385 Mich 670, 674; 189 NW2d 423 (1971), and compare MCLA 168.11; MSA 6.1011. We find this mechanical determination inappropriate as a general rule for the many and varied fact situations which may develop.

In *Stadelmann v Glen Falls Ins Co,* 5 Mich App
536, 541–542; 147 NW2d 460, 462–463 (1967), the
phrase "residents of his household" was construed.
The Court discussed the meaning of "resident" and
"household" as follows:

" 'Resident' is defined in Webster's New International
Dictionary (2d ed) as:
" 'Dwelling, or having an abode, for a continued
length of time; * * * one who resides in a place; one
who dwells in a place for a period of more or less
duration. Residence usually implies more or less perma-
nence of abode, but is often distinguished from inhabi-
tant as not implying as great fixity or permanency of
abode.'
" 'Resident' is defined in Black's Law Dictionary (4th
ed), p 1,473 as follows: 'One who has his residence in a
place.'
" 'Household' is defined in the same authority on p
873 as: 'A family living together. *Schurler v. Industrial
Commission,* 86 Utah 284 (43 P2d 696, 699, 100 ALR
1085). Those who dwell under the same roof and com-
pose a family.' " *Stadelmann, supra,* at 540.

In *Stadelmann* the facts were undisputed and
the Court ruled as a matter of law that the rela-
tive who was part of another household and a
resident of a foreign country was not an insured
within the policy's meaning. In the instant case
the facts are different and disputed.

In *Ortman v Miller,* 33 Mich App 451, 454–455;
190 NW2d 242, 244 (1971), now Justice LEVIN
discussed the meaning of the term "resident" and
quoted with approval from Corpus Juris Secundum
as follows:

"The terms 'residence' and 'resident' have no fixed
meaning in the law. They have variable meanings
depending on the context in which the words are used
and the subject matter:

" ' "Resident" has no technical meaning, and no fixed meaning applicable to all cases, but rather it has many meanings, and is used in different and various senses, and it has received various interpretations by the courts. Generally the construction or signification of the term is governed by the connection in which it is used, and depends on the context, the subject matter, and the object, purpose, or result designed to be accomplished by its use, and its meaning is to be determined from the facts and circumstances taken together in each particular case.' " (Citing 77 CJS, Resident, pp 305–306.)

We think that this more flexible approach is preferable. The trier of fact, in this case the court, has considered the evidence in light of all the surrounding circumstances, and his decision, not being clearly erroneous, will not be overturned.

Having thus determined that the phrase "resident of his household" has legal meaning only within the context of the numerous factual settings possible, the admission of various evidentiary items by the trial court, although not directly concerned with the date of the incident and residence on that date, was not improper. The question was one of weight, not admissibility. The admission of this evidence was not clearly erroneous.

We turn to the insurer's duty to defend the civil action for assault and battery. In testimony taken in this action the complainant in the civil case claimed that plaintiff kicked her. Plaintiff asserts that he only pushed her away after she grabbed him by the seat of the pants to evict him from a bar. The complainant conceded that the complained-of bruise on her arm was caused when she got her arm caught in the door slamming behind the plaintiff. The complainant also testified that plaintiff was not looking at her when he left the bar and slammed the door behind him. This is a

classic confrontation of disputed facts. Depending on the outcome of the fact finder's determination, these acts could be either negligent, intentional, or not actionable at all within the meaning of the policy. See and compare: *Morrill v Gallagher,* 370 Mich 578; 122 NW2d 687 (1963); *Putman v Zeluff,* 372 Mich 553; 127 NW2d 374 (1964); and *Hawkeye Security Ins Co v Shields,* 31 Mich App 649; 187 NW2d 894 (1971). The policy language concerning the duty to defend reads:

"1. Coverage E —Personal Liability:

"(a) Liability: To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage, and the Company shall defend any suit against the Insured alleging such bodily injury or property damage and *seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent;* but the Company may make such investigation and settlement of any claim or suit as it deems expedient." (Emphasis supplied.)

We think that the insurer using this broad language is required to defend. The question of whether they are required to defend should not rest solely on the *form* of pleading of a non-insured plaintiff. Whether the intentional acts exclusion will ultimately preclude payment is a mixed question of fact and law which, upon proper instruction and special questions, the jury or trier of fact in the assault and battery action can answer.

Affirmed. Costs to appellees.