*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DELISA MAPP,

      Plaintiff-Appellee,

v

PROGRESSIVE INSURANCE COMPANY,

      Defendant-Appellant,

and

FARM BUREAU MUTUAL INSURANCE
COMPANY, formerly known as FARM BUREAU
GENERAL INSURANCE COMPANY OF
MICHIGAN,

      Defendant-Appellee.

FOR PUBLICATION
April 27, 2023
9:05 a.m.

No. 359889
Wayne Circuit Court
LC No. 20-008016-NF

---

DELISA MAPP,

      Plaintiff-Appellee,

v

PROGRESSIVE INSURANCE COMPANY,

      Defendant-Appellee,

and

FARM BUREAU MUTUAL INSURANCE
COMPANY, formerly known as FARM BUREAU
GENERAL INSURANCE COMPANY OF
MICHIGAN,

No. 360828
Wayne Circuit Court
LC No. 20-008016-NF

Defendant-Appellant.

Before: M. J. KELLY, P.J., and SWARTZLE and FEENEY, JJ.

FEENEY, J.

While plaintiff Delisa Mapp is named as an appellee in this case, the dispute is really between Progressive Insurance Company and Farm Bureau Mutual Insurance Company over which company is obligated to pay plaintiff's PIP benefits for injuries arising out of a motor vehicle accident. The primary question presented in this case is whether a no-fault automobile insurance policy may provide for greater personal protection insurance (PIP) benefits than those mandated by the no-fault act.[1] The secondary question is whether the policy at issue in this case does provide for greater PIP benefits than required under the act. For the reasons discussed below, we conclude that a no-fault automobile insurance policy may provide for greater PIP benefits than are required under the act and that the policy at issue in this case does provide for greater benefits, but there exists a genuine issue of material fact whether plaintiff is entitled to benefits under the policy, even with its expanded coverage. Accordingly, we affirm the trial court's denial of the motions for summary disposition and remand the matter to the trial court for further proceedings.

The ultimate question presented in this case is which defendant insurer is responsible for the payment of PIP benefits to plaintiff for injuries suffered in a motor vehicle accident while plaintiff was a passenger in a 2016 Impala, that she co-owned and was being driven by a friend. The path to answering that question is not so simple. The other titled owner of the vehicle is plaintiff's ex-husband, Michael Mapp. Plaintiff and Michael were divorced in 2009 yet continued to reside together in a home on Burt Road in Detroit. Also relevant to this case is that one of their adult daughters, DeAndrea, lived with plaintiff and Michael in the Burt Road home until 2017 and stayed frequently at the Burt Road home thereafter.

As for the automobiles, Michael owned a 2010 Jeep Cherokee that Progressive insured for several years. In early 2019, plaintiff purchased the 2016 Impala. Michael co-signed the loan and both plaintiff and Michael are listed on the title. They spoke with a Progressive representative on the phone from the dealership requesting that the representative add the Impala to Michael's insurance policy. Progressive issued the policy and the declarations page listed plaintiff, Michael, and DeAndrea as drivers and resident relatives. It additionally listed Michael and DeAndrea, but not plaintiff, as named insureds. The policy covered three vehicles: the Impala, the Jeep Cherokee, and a Kia leased by DeAndrea.

Following the July 6, 2019 motor vehicle accident with the Impala, plaintiff sought PIP benefits from Progressive. Progressive denied the claim, because plaintiff was not a named insured or a resident relative of a named insured. Plaintiff thereafter applied for PIP benefits through the assigned claims plan and the claim was assigned to Farm Bureau. Plaintiff then filed suit against

---

[1] MCL 500.3101 *et seq.*

both insurers asserting that Progressive was the insurer of highest priority or, alternatively, that she was entitled to benefits from Farm Bureau as the assigned claims insurer.

Plaintiff, Michael, and DeAndrea were all deposed during discovery. Much of the questions centered around DeAndrea's domicile and residency. DeAndrea married in 2017, and moved out of the Burt Road home and in with her husband in a residence on Antietam in downtown Detroit. Michael testified that, "for the most part [the daughters] still reside there [at Burt Road]. It's, like, their second home. They [both adult children] can come back anytime" and "were never really excluded from the home" and they were always welcome. He added that he "never said they had to move out or anything. As far as [his] children goes it's always their home." Moreover, DeAndrea had her own room and kept some of her belongings at his house, in addition to DeAndrea's husband's apartment. DeAndrea still had her own key to the Burt Road house. Michael also testified that, both before and after the accident, DeAndrea would split her time between Burt Road and her husband's apartment, staying at each for a few days at a time and that she would regularly stay overnight at the Burt Road home.

DeAndrea testified that she moved to the Antietam apartment a few months after her marriage and that she considered it her primary address, including at the time of the accident. She testified that she intended to live at the Antietam address until she and her husband moved. She considered her parents' house to be "almost like a secondary place." She stated that she had no current intent to move back into her parents' house, but that she could if she wanted to. She confirmed that at the time of the accident, she split her time between Burt Road and the Antietam apartment and that she would come and go as she pleased at the Burt Road home.

Progressive moved for summary disposition asserting that it was not responsible for plaintiff's PIP benefits because plaintiff was not a named insured, a spouse of a named insured, or a relative of a named insured domiciled in the same household. Farm Bureau responded and filed its own countermotion for summary disposition, arguing that the Progressive policy provided coverage for those residing in the same household as a named insured, not just domiciled, and that it was clear that DeAndrea maintained a residence with her parents at Burt Road. Farm Bureau further argued that Progressive indicated an intent to insure plaintiff by designating her a resident relative on the policy's declarations page as well as by adding the vehicle to the policy, and Progressive accepted premiums in connection with the vehicle.

After hearing arguments, the trial court ruled as follows:

Progressive insured[] Michael Mapp, her ex-husband and their daughter, [DeAndrea] Mapp and Ms. Delisa Mapp, the Plaintiff was listed on that policy as a driver and resident relative.

The parties were divorced but they continued to live together or were living together at this time.

The statute MCL 500.3114(1) reads: A personal protection insurance policy described in section 3101 applies to accidental bodily injury to the person named in the policy, which was Michael Mapp and the daughter, [DeAndrea] Mapp, the person's spouse and a relative of either domiciled in the same household, if the injury arises from a motor vehicle accident.

-3-

There is no question as both attorneys have indicated that the Plaintiff, Delisa Mapp, was clearly a resident and domiciled in the household of 19039 Burt Road.

Domicile means one subject, and subject [sic] and declared intent of the person to remain indefinitely in the insured's house; two, the formality or informality of a relationship between the person and member of insured's household; and there [sic], whether the place where the person lives is in the same house, within the same curtelege [sic] or on the same premise for the existence of another place.

Domicile, pursuant to case law, does mean something different than residence. With domicile, there is an intent to remain requirement.

A resident, residence means any place of abode or dwelling place, however temporary. This Court is citing Grange, 494 Mich at 494[2] . . . .

Grange indicates that a person may have one domicile but more than one residence.

This is a (C)(10) motion so there cannot be any factual dispute. There is a deposition of the daughter that does indicate that she does use or did use at the time of the accident, the mailing address on Burt Road. She had possessions left at the home. The address was on her driver's license. She maintained a room there, she kept clothes there. She had important mail there. And there is no question that the Plaintiff, Delisa Mapp is the mother of the insured, [DeAndrea] Mapp.

In addition, again, Delisa Mapp was listed as a driver and resident relative within the policy of Progressive. There is issues [sic] with regards to Delisa Mapp making changes to this policy.

I take everything as in the light most favorable to the Plaintiff. I think pursuant to the statute, the policy itself with Progressive that identifies residence, Progressive's policy described eligible insured . . . person as you or anyone relative who sustains bodily injury in an accident involving a motor vehicle.

And a relative is defined as a person residing in the same household as you and related to you by blood.

I think there is absolutely a factual question whether Delisa Mapp is eligible for benefits under Progressive through the daughter, [DeAndrea] Mapp, such that summary disposition is not appropriate. And, I am denying that request.

---

[2] *Grange Ins Co v Lawrence*, 494 Mich 475; 835 NW2d 363 (2013).

The trial court further explained as follows:

> [T]his Court has relied on the definition in Grange but it's also, to me, relied on the plain meaning of residing. And there was enough indicia of the daughter residing at the Burt Road address to survive a summary disposition motion based on the case law that indicates what a resident means.
>
> [S]he's still using the mailing address, she still has possessions there, she still has a dedicated bedroom, she still had a key to the residence, all of that indicia survives this motion for summary disposition.

Thereafter, the trial court also ruled against Farm Bureau's motion for summary disposition concluding that there existed a genuine issue of material fact regarding whether DeAndrea resided in plaintiff's household. Both Progressive and Farm Bureau sought leave to appeal the respective rulings, which this Court granted. We affirm.

The applicable standards of review can be found in *Lewis v Farmers Ins Exch*:[3]

> This Court reviews de novo a trial court's decision on a motion for summary disposition. When reviewing a motion for summary disposition under MCR 2.116(C)(10), this Court may only consider, in the light most favorable to the party opposing the motion, the affidavits, together with the pleadings, depositions, admissions, and documentary evidence then filed in the action or submitted by the parties. Under MCR 2.116(C)(10), summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party. This Court is liberal in finding genuine issues of material fact.
>
> Additionally, issues of statutory construction are questions of law, which this Court reviews de novo. Likewise, this Court reviews de novo, as a question of law, the construction and interpretation of an insurance contract. [Quotation marks and citations omitted.]

Central to this dispute is the difference between the mandated PIP coverage under the no-fault act and the language of the Progressive policy in this case. MCL 500.3114(1) provides in relevant part as follows:

> Except as provided in subsections (2), (3), and (5), a personal protection insurance policy described in section 3101(1) applies to accidental bodily injury to the person named in the policy, the person's spouse, and *a relative of either domiciled in the same household*, if the injury arises from a motor vehicle accident. [Emphasis added.]

---

[3] 315 Mich App 202, 208-209; 888 NW2d 916 (2016).

By contrast, Progressive's policy provides as follows:

> If **you** pay the premium for this coverage, **we** will pay Personal Protection Insurance Benefits required by the Michigan No-Fault Law, Chapter 31 of the Michigan Insurance Code, as amended, for accidental **bodily injury** to an **eligible injured person** arising out of the ownership, operation, maintenance or use of a **motor vehicle** as a **motor vehicle**, subject to the exceptions, exclusions and limitations specified herein and as additionally provided by the law of the State of Michigan.

The policy further provides that an "eligible injured person" means "**you** or any **relative** who sustains accidental **bodily injury** in an accident involving a **motor vehicle**."[4]  And it defines "relative" in relevant part as

> a person *residing* in the same household as **you**, and related to **you** by blood, marriage or adoption, and includes a ward, stepchild, or foster child.   [Emphasis added.]

Finally, "you" is defined as a "named insured" on the declarations page.  In this case, Michael and DeAndrea, but not plaintiff, are identified as named insureds on the declarations page.[5]

Because plaintiff is not a named insured on the declarations page, Progressive is responsible for the payment of her PIP benefits under MCL 500.3114(1) if she is domiciled in the same household as DeAndrea.[6]  But, if that is not the case, then Progressive is responsible for the payment of PIP benefits only if the policy language creates that obligation and plaintiff resides in the same household as DeAndrea.

It is this distinction between the statute's use of the term "domiciled" and the policy's use of the word "residing" that is at the core of this dispute.  Assuming that plaintiff and DeAndrea are not domiciled in the same household, then the questions before us are (1) whether the use of the word "residing" provides broader coverage than "domiciled" and, if so, (2) whether an insurer can provide for broader PIP benefits than those required by statute.  We answer both questions in the affirmative.

We start with our Supreme Court's discussion of "domicile" and "residence" as it applies to the no-fault act in *Grange*:[7]

---

[4] All bold face in policy quotations are original in the policy.

[5] This is done in a section labeled "Drivers and resident relatives."  This section has a column for names and a column labeled "Additional information."  Michael, plaintiff, and DeAndrea are listed in the name column.  The "additional information column" identifies Michael and DeAndrea as named insures, while there is no entry for plaintiff.

[6] It is not disputed that plaintiff is a relative of DeAndrea, but that she is not a relative of Michael.

[7] 494 Mich at 493-496.

For over 165 years, Michigan courts have defined "domicile" to mean the place where a person has his true, fixed, permanent home, and principal establishment, and to which, whenever he is absent, he has the intention of returning. Similarly, a person's domicile has been defined to be that place where a person has voluntarily fixed his abode not for a mere special or temporary purpose, but with a present intention of making it his home, either permanently or for an indefinite or unlimited length of time. In this regard, the Court has recognized that it may be laid down as a settled maxim that every man must have such a national domicile somewhere. It is equally well settled *that no person can have more than one such domicile, at one and the same time*. From this settled principle, it follows that

> a man retains his domicile of origin upon his birth until he changes it, by acquiring another; and so each successive domicile continues, until changed by acquiring another. And it is equally obvious that the acquisition of a new domicile does, at the same instant, terminate the preceding one.

In this way, our common law has recognized that from the time of a person's birth—from childhood through adulthood—a person can only have a single domicile at any given point in time. Indeed, there are few legal axioms as established as the one providing that every person has a domicile, and that a person may have one—and *only* one—domicile.

In furtherance of this understanding of domicile, the common law has necessarily distinguished between the concepts of "domicile" and "residence:"

> The former, in its ordinary acceptation, was defined to be, 'A place where a person lives or has his home,' while any place of abode or dwelling place, however temporary it might have been, was said to constitute a residence. A person's domicile was his legal residence or home in contemplation of law.

Stated more succinctly, a person may have only one domicile, but more than one residence. For purposes of distinguishing "domicile" from "residence," this Court has explained that domicile is acquired by the combination of residence and the intention to reside in a given place . . . . If the intention of permanently residing in a place exists, a residence in pursuance of that intention, however short, will establish a domicile. The traditional common-law inquiry into a person's "domicile," then, is generally a question of intent, but also considers all the facts and circumstances taken together.

Returning to the language of MCL 500.3114(1), there is no indication that the Legislature intended to deviate from this well established common-law meaning of the term "domicile." And, because a person, from the moment of his birth onward, can only have one domicile within the traditional meaning of that term, it follows that a child, regardless of his parents' marital status or his multiple legal residences, may also have only one domicile at any given point in time.

Indeed, rather than there being any indication that the Legislature intended to deviate from this common-law rule, there is, in fact, evidence that the Legislature *favored* this single-location rule. Had the Legislature intended to make insurers liable for PIP benefits for dual coexisting "domiciles," then it would have used the term "resided," not "domiciled," because, as previously explained, a person may have more than one residence at a time, but only one domicile. However, the Legislature instead expressly chose to use the more restrictive term, "domiciled," thereby limiting the universe of insurers that are potentially liable under MCL 500.3114(1). In fact, the Legislature specifically rejected use of the term "residence," as used in the uniform act on which the no-fault act is modeled, in favor of the term "domiciled" in defining those eligible for PIP benefits under MCL 500.3114(1). The Legislature thus affirmatively chose a term that it knew had a particular meaning, and we must accord this legislative choice its full weight when determining the Legislature's intent. [Quotation marks, citations, footnotes, and alterations omitted; emphasis in original.]

In our view, this clearly answers the first question: Progressive's use of the word "residing" in its policy, rather than the statutory term "domiciled," on its face provides broader coverage than does the statute.

Farm Bureau does argue that there is at least an issue of fact whether DeAndrea was domiciled at the Burt Road home. We disagree. Again, turning to *Grange*, the Court offered guidance on the issue of domicile, relying on the decisions in *Workman v Detroit Auto Inter-Ins Exch*,[8] and *Dairyland Ins Co v Auto-Owners Ins Co*.[9] The *Grange* Court[10] adopted the following factors from *Workman* to determine domicile:

(1) the subjective or declared intent of the person of remaining, either permanently or for an indefinite or unlimited length of time, in the place he contends is his "domicile" or household"; (2) the formality or informality of the relationship between the person and the members of the household; (3) whether the place where the person lives is in the same house, within the same curtilage or upon the same premises, (4) the existence of another place of lodging by the person alleging "residence" or "domicile" in the household.

The *Grange* Court[11] further observed as follows that in *Dairyland*,

---

[8] 404 Mich 477; 274 NW2d 373 (1979).

[9] 123 Mich App 675; 333 NW2d 322 (1983).

[10] *Grange*, 494 Mich at 497, quoting *Workman*, 404 Mich at 496-497 (citations omitted).

[11] *Grange*, 494 Mich at 497 n 41, quoting *Dairyland*, 123 Mich App at 682.

the Court of Appeals added five more factors relevant for determining no-fault domicile, with a particular focus on adult children of an insured who may have complicated living arrangements:

> Other relevant indicia of domicile include such factors as [1] whether the claimant continues to use his parents' home as his mailing address, [2] whether he maintains some possessions with his parents, [3] whether he uses his parents' address on his driver's license or other documents, [4] whether a room is maintained for the claimant at the parents' home, and [5] whether the claimant is dependent upon the parents for support.

Applying these principles to this case, it cannot be reasonably disputed that, at the time of the accident, DeAndrea was "domiciled" with her husband in their household at Antietam. Testimony established that DeAndrea had moved out of her parents' Burt Road house a few months after her November 2017 marriage, and thereafter was domiciled with her husband in their Antietam apartment, including at the time of the July 8, 2019 accident. When plaintiff was asked who lived with her at Burt Road, she replied, "[w]hen the accident happened, just Michael Mapp, [her] ex-husband." Asked where DeAndrea was living when the accident occurred, plaintiff answered, "with her husband. They live downtown, like, Antietam." Michael similarly testified that he believed that DeAndrea was already married when the accident occurred, and that she and her husband had their own place, although Michael did not agree that DeAndrea had moved out of Burt Road, explaining that both of his daughters still resided there as a second home to which they might always return.

Significantly, DeAndrea testified that she moved out of her parents' Burt Road house, and moved in with her husband at their Antietam apartment, a few months after they were married in November 2017, when DeAndrea was in her upper twenties. Further, DeAndrea testified that, at the relevant time, she considered the apartment she shared with her husband to be her primary and permanent residence. DeAndrea further testified that she had no current intention to move back to her parents' house. She described her parents' house as a second home, to which she could always return, but also expressed her intent not to reside there permanently.

We are not persuaded that there exists an issue of fact regarding DeAndrea's domicile. It is at her Antietam address, not on Burt Road. But that does not end the analysis given that the Progressive policy refers to residence, not domicile. There remains the second question to be answered: can the policy provide broader coverage than that mandated by statute.

We find some guidance, though not a definitive conclusion, in the Supreme Court's decision in *Rohlman v Hawkeye-Security Ins Co*,[12] wherein the Court stated:

> In this case, as in *Royal Globe* [*Ins Co v Frankenmuth Mutual Ins Co*, 419 Mich 565; 357 NW2d 652 (1984)], we have a situation in which the policy language provides a definition of occupant different from, and possibly broader than, the no-fault act. However, the issue was not argued by the litigants in *Royal Globe*, nor

---

[12] 442 Mich 520, 530-531 n 10; 502 NW2d 310 (1993).

has it been presented by the parties in this case. In arguing that the policy definition of occupying controls, the plaintiff merely asks us to limit our *Royal Globe* decision to priority disputes between insurance companies and to apply *Nickerson* [*v Citizens Mutual Ins Co*, 393 Mich 324; 224 NW2d 896 (1975)] in those fact-sensitive cases where the plaintiff otherwise would not be entitled to a recovery as proposed by the dissenting opinion.

We emphasize that under the facts of this case and according to the arguments presented by the parties, the statute controls, and we do not deal with the question whether the policy can and, if so, did provide coverage broader than that required by the no-fault act. Although we reserve the issue for a case in which the issue is properly before us, we note the following from [ 12A Couch Insurance, 2d (rev ed), n 3] § 45:697, p 334.

> A compulsory insurance statute in effect declares a minimum standard which must be observed, and a policy cannot be written with a more restrictive coverage.

> The statute is manifestly superior to and controls the policy, and its provisions supersede any conflicting provisions of the policy.

However,

> [a]lthough an insurer may not by its contract restrict its coverage to less than that required by statute, it may contract for a broader coverage than the statutory liability, as, for instance, with respect to territory, amount, circumstances of operation, etc., and in such case recovery is measured solely by the policy. The fact that the coverage of the policy may be broader than that required by statute is immaterial, for the contract of the parties may be enforced as written. [Id., § 45:699, p 336.]

A similar observation was made by this Court in *Bronson Health Care Group, Inc v State Auto Property and Casualty Ins Co*:[13]

> Although plaintiff argues that the issue before us is purely one of contractual interpretation, we conclude that when, as in this case, the benefits in question are mandated by statute, the issue is actually one of statutory interpretation. "[T]he no-fault act mandates certain minimal coverage," although "a policy of insurance may provide broader coverage than that mandated under the statute or may provide supplemental coverage for benefits not required by the no-fault act*." Rednour v. Hastings Mut Ins Co*, 245 Mich App 419, 422; 628 N.W.2d 116 (2001), rev'd on other grounds 468 Mich 241; 661 NW2d 562 (2003). For nonmandated coverage, "it is the insurance policy as a contractual agreement between the parties that governs the coverage, rather than the statutory provisions of the no-fault act...." *Id*.

---

[13] 330 Mich App 338, 342; 948 NW2d 115 (2019).

However, for mandated coverage, it is the no-fault act itself that governs the coverage. *Id*.; see also *Cruz v State Farm Mut Auto Ins Co,* 241 Mich App 159, 164-167; 614 NW2d 689 (2000).

The *Bronson* Court[14] went on to state: "As noted, it is permissible for an insurance policy to provide for broader coverage than is required by statute, in which case the policy may be enforced as written. See *Rohlman v Hawkeye-Security Ins Co*, 442 Mich. 520, 530-531 n. 10, 502 N.W.2d 310 (1993) (citing 12A Couch, Insurance, 2d (rev. ed.), § 45:699, p. 336)."

Another helpful, but not controlling, decision is this Court's opinion in *Lewis v Farmers Ins Exch*.[15] *Lewis* acknowledged a question similar to that presented in the case before us:

> The trial court's decision in this case was based not only on its interpretation of MCL 500.3114(1), but also on its determination that Gordon qualifies as a family member under the insurance policy. Accordingly, our analysis of this issue requires two separate, but related, inquiries: (1) whether plaintiff qualifies as a relative of Gordon for purposes of MCL 500.3114(1); and (2) if the policy provides broader coverage than that required under MCL 500.3114(1), whether plaintiff qualifies as a family member as that term is used in the policy.

Unfortunately, at least for our analysis, *Lewis* ultimately concluded that the plaintiff was not a relative under the statute or the policy language. But the fact that the Court raised the question and engaged in the analysis does suggest that it believed that the policy language could potentially have provided broader coverage than that mandated by the statute.

Progressive's counterargument relies heavily on the Supreme Court's decision in *Meemic Ins Co v Fortson*.[16] But, like the other cases, *Fortson* does not provide a clear, binding resolution of the question whether policy language can provide broader coverage than the statute mandates. *Fortson* did not involve the question whether a policy can provider broader coverage than that mandated by the no-fault act; rather, it involved the question whether a contractual defense can limit that coverage.[17] Specifically, the Court held that a contractual antifraud defense to mandatory coverage is valid only if it is grounded in the no-fault act itself or in the common law.[18]

With these cases in mind, and having to squarely address this question in order to resolve the case before us, we conclude that a no-fault insurance policy may provide broader coverage than that mandated by the no-fault act, even with respect to a mandated coverage such as PIP benefits. That is, while a no-fault insurer *must* provide at the least the minimum coverage required by the statute (i.e., for relatives *domiciled* in a named insured's household), it *may* provide

---

[14] 330 Mich at 343 n4.

[15] 315 Mich App 202; 888 NW2d 916 (2016).

[16] 506 Mich 287; 954 NW2d 115 (2020).

[17] *Id*. at 293.

[18] *Id.*

coverage for a broader group of persons (e.g., for relatives *residing* in a named insured's household).

And that is exactly what occurred in this case. As discussed previously, "residence" is a broader concept than "domicile," and although a person may only have one domicile, they may have multiple residences. Therefore, while plaintiff and DeAndrea may not be domiciled in the same household, the facts may support a conclusion that they both are residents of the same household. If so, then plaintiff is entitled to PIP benefits under the Progressive policy because she is a relative residing in the same household as a named insured, DeAndrea.

The *Grange* Court held that, in order to be "residing in the same household with a named insured," under the Uniform Motor Vehicle Reparations Act, "a person need only *reside* in the same household as the policy holder to be considered a basic reparation insured who may claim benefits against the policyholder's insurance company."[19] We also look to the dictionary definition of "resident" and similar terms. Black's Law Dictionary defines "residence" as "[t]he act or fact of living in a given place for some time" or "the place where one actually lives," explaining as follows:[20]

> *Residence* usu. just means bodily presence as an inhabitant in a given place; *domicile* usu. requires bodily presence plus an intention to make the place one's home. A person thus may have more than one residence at a time but only one domicile. Sometimes though the two terms are used synonymously.

Likewise, *Webster's New World College Dictionary* (3d ed) defines the term "reside" as "to dwell for a long time; have one's residence; live (*in* or *at*)." And, in *Montgomery v Hawkeye-Security Ins Co*,[21] this Court referred to the dictionary definition of "resident" in *Webster's New International Dictionary* (2d ed), as follows:

> Dwelling, or having an abode, for a continued length of time; . . . one who resides in a place; one who dwells in a place for a period of more or less duration. Residence usually implies more or less permanence of abode, but is often distinguished from inhabitant as not implying as great fixity or permanency of abode. [Quotation marks and citation omitted; alteration in original.]

Given the clear distinction between "reside" and "domicile" in *Grange*, as well as the common or popular definitions of those terms by our courts, the term "reside" can be understood as meaning living in a place for substantial time beyond mere transient physical presence.

---

[19] *Grange*, 494 Mich at 496 n 39 (emphasis in original), citing 14 ULA, Civil Procedural and Remedial Laws, Uniform Motor Vehicle Accident Reparations Act, § 1(a)(3)(ii), p 43.

[20] *Black's Law Dictionary* (10th ed).

[21] 52 Mich App 457, 460; 217 NW2d 449 (1974).

Turning to the term "household," it is also not defined in the subject policy. Relying on dictionary definitions, this Court has interpreted "household," as used in an insurance policy, as "one family unit living together under the same roof."[22] The facts so far developed in this case would support a conclusion that this is a family unit living under the same roof. A flexible approach should be employed in determining whether relatives are "residing in the same household," considering the circumstances of the living arrangement.[23] One could conceivably reside only in one's domicile, reside in two households, or reside outside of one's domicile. Indeed, by including the second sentence in its definition of "relative," i.e., "**Your** unmarried dependent children temporarily away from home will qualify as a **relative** if they intend to continue to reside in **your** household," Progressive specifically anticipated such a situation, extending coverage to a dependent child even though he or she is temporarily away from the household.

In its reply brief, Progressive argues that its policy has an "explicit limitation" on the payment of PIP benefits to only those required by the no-fault act. Progressive does not explicitly identify the language it is relying upon in this argument, but we assume it is the phrase that they "will pay Personal Protection Insurance Benefits required by the Michigan No-Fault Law . . . ." We do not read that phrase, however, as limiting Progressive's obligations to the minimum required by the statute. Rather, it is an acknowledgment that, regardless of what may or may not be within the policy language, Progressive is obligated to pay at least the minimum required by law. Similarly, Progressive points to a catch-all provision in the policy, under the heading "TERMS OF POLICY CONFORMED TO STATUTES" that provides that if any policy provision "fails to conform to the statutes of the state listed on **your** application as **your** residence, the provision shall be deemed amended to conform to such statutes." But, because as we have decided that an insurer may grant coverage broader than that required by statute, any provision that grants broader coverage *does* conform to the statute. It would only be if the statute prohibits broader coverage that the such a policy would be nonconforming. Indeed, the very next sentence of the policy states that "All other provisions shall be given full force and effect." Accordingly, we will give "full force and effect" to the policy provision that agrees to pay PIP benefits to residents of the same household, not just those domiciled there.

In sum, Progressive could have limited its coverage to the minimum required by the statute. It chose, however, to employ language in its policy that provides broader coverage, namely to any relative residing in the same household as a named insured. And, the facts as detailed above, at a minimum create a genuine issue of material fact that, although DeAndrea's domicile was elsewhere, she also continued to maintain a residence on Burt Road with plaintiff.

The facts discussed above are sufficient to establish that the trial court correctly ruled that there is a genuine issue of material fact that plaintiff and DeAndrea resided in the same household and, if the facts bear that out to be the case, the policy provides coverage for the PIP benefits. But

---

[22] *Barnes v 21st Century Premier Ins Co*, 334 Mich App 531, 544, 546; 965 NW2d 121 (2020).

[23] See *Workman*, 404 Mich at 495-496 (recognizing that the meaning of "resident of a household" may vary according to the circumstances); *Montgomery*, 52 Mich App at 460-461 (recognizing that a "mechanical determination [is] inappropriate as a general rule for the many and varied fact situations which may develop").

there also remains an argument by Farm Bureau that, if correct, would lead to summary disposition in favor of Farm Bureau. Farm Bureau argues that the declarations page identifies plaintiff as a "resident relative" and this establishes coverage, especially in light of the fact that Progressive accepted a premium to provide that coverage. This argument, of course, is also dependent on our conclusion that a no-fault insurance policy can provide greater coverage than that mandated by statute.

As noted above, the declarations page has a section entitled "Drivers and resident relatives" which lists Michael, plaintiff, and DeAndrea, with Michael and DeAndrea (but not plaintiff) identified as named insureds under the column "Additional information."[24] "The policy application, declarations page of policy, and the policy itself construed together constitute the contract."[25]

Farm Bureau's argument presents us with three challenges. First, it is not clear to us whether the "and" in "drivers and resident relatives" serves to identify those individuals that are both drivers and resident relatives, or whether it serves to identify those who are one or the other but not necessarily both. This is important because if drivers who are not resident relatives are included in the list, this Court has held that listing someone merely as a driver does not make them an insured.[26] But, to the extent that the phrasing creates an ambiguity, it must be construed against Progressive as the drafter of the policy.[27] Therefore, we must conclude that the label "resident relative" applies to everyone, including plaintiff, listed in the declarations page.

Our second challenge is that even if we read that heading as establishing that all persons listed, including plaintiff, are resident relatives, this becomes more of an estoppel argument than a coverage argument. That is, as discussed at length above, the policy language grants coverage to relatives of named insureds. The policy provides a definition of "relative" that plaintiff meets, however, only if she resides in the same household as a named insured listed on the declarations page. Thus, the argument would be that Progressive, having listed plaintiff as a "resident relative" is now estopped from arguing that she is not a relative who is a resident of the household. Farm Bureau does not present this as an estoppel argument but rather as an "intent to insure" argument.

---

[24] We are perplexed by the fact that plaintiff was not, in fact, listed as a named insured. She was a titled co-owner of the Impala, along with Michael, and there is no dispute that plaintiff was domiciled with him and Michael is listed as a named insured. And DeAndrea *is* listed as a named insured even though, according to Progressive, she neither resides nor is domiciled at the Burt Road home. Indeed, it would seem beyond dispute that plaintiff was looking to Progressive to provide the insurance coverage, including PIP benefits, that, as an owner of the Impala, she was required to have under MCL 500.3101(1).

[25] *Royal Property Group, LLC v Prime Ins Syndicate, Inc*, 267 Mich App 708, 715; 706 NW2d 426 (2005).

[26] See *Dobbelaere v Auto-Owners Ins Co*, 275 Mich App 527, 534 n 3; 740 NW2d 503 (2007).

[27] See *State Farm Mut Auto Ins Co v Enterprise Leasing Co*, 452 Mich 25, 38; 549 NW2d 345 (1996).

Our third challenge is that the trial court did not address this argument. Even assuming that there may be merit to Farm Bureau's argument, the trial court should be afforded the first opportunity to address it, including developing any additional facts or arguments that might support or oppose Farm Bureau's theory of coverage.

Finally, Farm Bureau argues that it should have been dismissed from this case because Progressive is established as the priority payer of PIP benefits. But the trial court ruled, and we agree, that while Progressive may very well be the priority payer, that determination is dependent upon further factual development.

For these reasons, we conclude that a no-fault insurance policy may by its terms provide broader coverage than that required by the no-fault act even with respect to mandated coverages. In this case, the policy language provides for a broader category of eligible recipients of PIP benefits beyond the statutorily requirement of coverage for those relatives domiciled in a named insured's household. And the facts presented in this case establish a genuine issue of material fact whether plaintiff is eligible to receive PIP benefits under Progressive's policy.

Affirmed. The case is remanded to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction. No costs, no party having prevailed in full.

/s/ Kathleen A. Feeney
/s/ Michael J. Kelly
/s/ Brock A. Swartzle